IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:10-cv-00918-UA-LPA

| | | |
|---|---|---|
| RONNIE MAXWELL, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **AMENDED**<br>**CLASS ACTION COMPLAINT**<br>**(Jury Trial Demanded)** |
| REMINGTON ARMS COMPANY, INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**NOW COMES** the Plaintiff Ronnie Maxwell, for himself and all others similarly situated, by and through his attorneys, prior to service of responsive pleading, and amends this complaint as a matter of course, pursuant to Rule 15(a) of the Rules of Civil Procedure, complaining of the Defendants, alleges and says as follows

## INTRODUCTION

1.      This is a class action brought by the Plaintiff, on behalf of himself and all others similarly situated, against Defendant Remington Arms Company, Inc.  This lawsuit concerns violations of the Magnuson Moss Warranty Act, Unjust Enrichment and the use of Unfair and Deceptive Trade Practices in the sales of Remington manufactured semi-automatic rifles, model number 597 17 HMR for consumer use.

## JURISDICTION

2.      This Court has diversity jurisdiction over the claims asserted herein on behalf of a nationwide class of consumers under 28 U.S.C. §1332, as amended in February 2005, by the Class Action Fairness Act. Plaintiff is a citizen of Texas, Defendant is a Delaware corporation with its principal place of business in Rockingham County, North Carolina. The matter in controversy exceeds $5,000,000.00, exclusive of interest and cost. The Court also has

jurisdiction because Plaintiff seeks remedies under the Federal Magnuson-Moss Warranty Act and Plaintiff satisfies its jurisdictional requirement independently.

## VENUE

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (2) and (3).

## FACTUAL BACKGROUND

4.     Plaintiff is a consumer that purchased two Remington manufactured semi-automatic rifles, model number 597 17 HMR for consumer use.

5.     Remington's marketing materials provided numerous representations concerning the Remington manufactured semi-automatic rifles, model number 597 17 HMR and its ammunition, including but not limited to the following representations:

a.     "No other arms and ammunition manufacturer combines so much tradition and experience with innovative technology and precision craftsmanship."

b.     "The reasons for choosing Remington are as numerous as the models of guns and types of ammunition we make.  Some say it's the legendary accuracy.  Some say it's the unbeatable value. . . .   Regardless of the reason, we remain unwavering on our dedication to producing firearms, ammunition and accessories which embody the highest standards in quality and are instilled with the spirit of a legendary brand – Remington"

c.     "**Model 597™ – Where Technology Meets Craftsmanship**"

"Whether you use it for hunting, serious target shooting or an afternoon of plinking, one thing is certain: This is no ordinary rimfire rifle.  Far from it.  In fact, the Model 597™ is easily the most advanced autoloading rimfire rifle ever built.  And the first breakthrough in autoloading rimfire rifle technology in 35 years.  The difference starts with our proprietary bolt-guidance system.  It features a unique set of twin tool-steel guide rails (other brands feature only grooved

aluminum slots).  Because steel is stronger and far more resistant to wear, the result is not only better stability, feeding reliability and accuracy right out of the box, but significantly superior performance through time.

Of course, we didn't stop there.  The bolt, hammer and sear of the Model 597 all feature an exclusive Teflon®/nickel plating for absolutely smooth, dependable operation and an ultra-crisp trigger pull (that stays that way).  To assure reliable, long-life accuracy, we've also incorporated a unique positive-locking, permanently rigid barrel attachment clamp.  Receivers are grooved for standard rimfire mounts and tapped/drilled for Weaver-style bases.  Completing the breakthrough design are an innovative last-shot magazine."

d.      "**Model 597™ 22LR and Magnum Version Metal Magazine**"

"Constructed from a lightweight, magnesium based alloy and cast as one piece via a non-conventional die-cast process, our metal magazine holds ultra-precise dimensional tolerance and yields an exceptional surface finish.  Moreover, its extreme rigidity is ideal for demanding high-volume use. . . ."

e.      "**Model 597™ Metal Magazine.** Constructed from a light-weight, magnesium-based alloy and cast as one piece using a die-cast process, the 597 magazine has an 8-shot (magnum) and 10-shot (long-rifle) capability.  Their extreme rigidity is ideal for demanding, high-volume use."

f.      "**Rimfire – From International competition to Tin Can Demolition.** Over the years, no manufacturer has been responsible for more advancements in rimfire ammunition than Remington®.  No doubt this is because we give our rimfire ammunition the same meticulous manufacturing attention as our centerfire ammunition.  AS a result, we produce the widest

variety of rimfire loadings for every possible end use. Whether its hunting, plinking or competing, Remington rimfire cartridges offer consistently outstanding performance.

At Remington, we're more than just the industry leader in quality and reliability. By bringing you industry firsts, like the Yellow Jacket® and Viper® hyper velocity ammunition, we've solidified our reputation as leaders in innovation, too. Our commitment to bring you the hottest ammunition on the market continues with the 17 HMR."

6.     Remington's representations concerning the Remington Model 597 17 HMR rifles and ammunition were false, misleading and deceptive.

7.     Due to safety and performance concerns, Remington recently recalled all Remington Model 597 17 HMR rifles and the ammunition for them. Remington has issued a notice to consumers instructing them to "immediately stop using your Remington Model 597 17 HMR semi-automatic rifle" and to "immediately discontinue use of Remington 17 HMR ammunition." (All of Remington's recall notices and published warnings are incorporated by reference as if set out herein *verbatim*)

8.     Plaintiff's two rifles have been rendered valueless by virtue of the safety recall; they are too dangerous to shoot or to sell.

## CLASS ACTION ALLEGATIONS

9.     Plaintiffs expressly disclaim any intent to seek in this suit any recovery for personal injuries that have been suffered or may be suffered by any class member.

10.     Class certification is also proper because Defendants have acted or refused to act on grounds generally applicable to the class making class action certification appropriate.

11.     Each class member will be identified through discovery from Defendant and will be notified and given an opportunity to opt out of the class in the event he or she has no interest in being represented by this action or, if for any reason, prefers to be excluded from the class.

The judgment will not be binding on those members who opt out of the class. Consequently, any potential class members who have an interest in prosecuting separate claims and controlling their own litigation against Defendants will not be prejudiced by this action.

12.    Plaintiff's claims are not barred by any applicable statute of limitations or repose.

13.    This action is brought by Plaintiff on behalf of all those similarly situated, i.e. "all persons who purchased one or more Remington 597 17 HMR semi-automatic rifles" ("the Class").

14.    The Class is so numerous that joinder of all members is impractical. Upon information and belief, thousands of the Remington 597 17HMR semi-automatic rifles have been sold and are subject to the recall.

15.    There are questions of law and fact, common to the Class, which predominate over any questions affecting only individual class members. The principal question is what remedy is appropriate for the class members.

16.    The claims of the named Plaintiff are typical of the class he seeks to represent. The claims all arise from the same operative facts and are based on the same legal theories.

17.    Plaintiff will fairly and adequately protect the interests of the Class, and is committed to vigorously litigating this case. Plaintiff has retained counsel experienced in handling class action cases. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this case.

18.    Questions of law and fact that are common to the class members predominate over any individual questions that might affect only individual members of the Class. A class action is superior to other available methods for the fair and efficient adjudication of the controversy pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Even if each

Class member could afford individual litigation, the court system could not with it being unduly burdensome if thousands of individual cases proceed.

## FIRST CLAIM FOR RELIEF

## BREACH OF WARRANTY-MAGNUSON-MOSS WARRANTY ACT

19.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

20.     All Remington 597 17 HMR rifles are "consumer products" as defined by §15 U.S.C. 2301(1), part of the Magnuson-Moss warranty Act, 15 U.S.C. §§2301-2312. With respect to all Remington 597 17 HMR rifles sold, Remington made a written limited warranty as defined by 15 U.S.C. §§2301 (6) and 2303(a). Remington made known its breach of the limited warranty on or about August 2009 when it issued a recall of all Remington 597 17 HMR rifles. Notwithstanding the recall, Remington has failed to remedy the warranty. The term "remedy" as used in 15 U.S.C. §§2301 (10) and (12) means to repair, replace or refund the actual purchase price.  Plaintiff, as the putative representative of the class, and acting on behalf of the class consisting of all purchasers of Remington Model 597 17 HMR rifles, has given and hereby gives Remington a reasonable opportunity to cure its failure to remedy its breach of its written warranty.

21.     For himself and each member of the class, Plaintiff seeks actual damages consisting of the actual purchase price of each Remington 597 17 HMR owned by each class member plus cost and expense including attorneys' fees.

22.     All conditions precedent to Plaintiff bringing a class action under the Magnuson-Moss Warranty Act have been satisfied.

## SECOND CLAIM FOR RELIEF

## UNJUST ENRICHMENT/MONEY HAD AND RECIEVED

23.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

24.     Plaintiff and the Class paid for their rifles purchases in cash or its equivalent.

25.     To allow Remington to keep the cash or its equivalent, while Plaintiff and the Class hold worthless and dangerous rifles and ammunition would unjustly enrich Remington at the expense of the innocent Plaintiff and Class.

26.     In equity and good conscience, Remington should be ordered to pay restitution to Plaintiff and the Class because to do otherwise would unjustly enrich Remington.

## THIRD CLAIM FOR RELIEF

## UNFAIR AND DECEPTIVE TRADE PRACTICES

27.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

28.     The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful."  N.C. Gen. Stat. § 75-1.1(a).

29.     Defendant represented that the Model 597 17 HMR rifles and ammunition would be free from defects and fit for their intended purpose, under normal conditions of use, wear and exposure.

30.     Defendant marketed and represented that the Model 597 17 HMR rifles and ammunition contained a superior design, was a true value, and was otherwise safe for use as a sport hunting and target rifle by consumers, including the Plaintiff and Class Members.

31.     Defendant knew or should have known that the Model 597 17 HMR rifles and ammunition did not or would not conform to Defendant's representations and promises.

32.     By making these false and misleading misrepresentations and omissions, and by concealing the true facts from the Plaintiff, the Defendant intended that the Plaintiff and Class would rely on its false statements and material omissions, and intended to induce the Plaintiff and Class to purchase the Model 597 17 HMR rifles and ammunition.

33.     The Defendant's unfair and deceptive conduct, as herein alleged, occurred in the course of the sale of a consumer good, to wit, the Model 597 17 HMR rifles and ammunition, and thus are "in or affecting commerce," for the purpose of establishing liability under Chapter 75 of the North Carolina General Statutes.

34.     Based upon Defendant's misrepresentations, material omissions, and business practices, Plaintiff and the Class believed that Defendant was selling and providing a safe and reliable rifle for hunting and/or target practice.  Furthermore, Defendant's practices, as alleged herein, are such that reasonable consumers, would likewise believe that the Model 597 17 HMR rifles and ammunition would be free from defects and fit for their intended purpose under normal conditions of use, wear and exposure for an extended period of time.

35.     Additionally, Defendant never informed Plaintiff or the Class that in the event of a recall, Remington would only supply coupons that: (a) do not necessarily provide a full refund; and (b) require consumers to buy another Remington product.

36.     Further, Remington's solution to this recall was just such coupons with those shortcomings, yet Remington does not make a gun comparable to the Model 597 17 HMR rifle that Plaintiff and each Class member specifically chose to buy and therefore cannot replace using the coupons.

37.     Remington also cannot sell a semi-automatic Model 597 17 HMR rifle due to inherent problems with that ammunition in semi-automatic weapons, and therefore consumers are forced to spend their coupon on a weapon type that they did not intend to purchase. Remington's coupon also does not represent the full value of the weapon or the ammunition at the time they were purchased.

38.     Upon information and belief, the Defendant's unfair and deceptive representations and omissions regarding the Model 597 17 HMR rifles and ammunition, as herein alleged, are all pursuant to policies, practices and procedures created and adopted by Remington, and implemented throughout the United States by Defendant.

39.     Defendant's misrepresentations, material omissions, and business practices, as alleged in this Complaint, constitute unfair and/or deceptive acts or practices in violation of the provisions of Chapter 75 of the North Carolina General Statutes.

40.     Defendant's misrepresentations, concealments, and unfair and deceptive acts or practices proximately caused actual injury/damage to the Plaintiff and the Class Members.

41.     Plaintiff and the Class members are entitled to receive compensation for these damages, in an amount to be determined at trial.

42.     As a direct and proximate result of Defendant's unfair and/or deceptive acts and practices, in or affecting commerce, Plaintiff and the Class Members are entitled to recover treble damages from Defendant, pursuant to N.C. Gen. Stat. §75-16, and to recover their reasonable attorneys' fees as provided for in N.C. Gen. Stat. § 75-16.1.

## JURY DEMAND

43.     Plaintiff hereby requests, for himself and all members of the Class, a trial by jury.

**WHEREFORE**, Plaintiff respectfully prays unto the Court as follows:

1.     That the Court certify this action as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure;

2.     That Plaintiff and Class Members have and recover the damages determined to have been sustained by each of them respectively, and that judgment be entered against Defendant for the replacement costs of the Model 597 17 HMR rifles and ammunition in sums to be determined by the jury, in an amount to be determined at trial;

3.     That alternatively Plaintiff and Class Members have and recover disgorgement

from Defendant and restitution of all amounts paid for the subject rifles and ammunition by Plaintiff and the putative Class as a result of the wrongs alleged herein;

4.      That any damages awarded Plaintiff and Class Members be trebled pursuant to the provisions of North Carolina General Statute § 75-16;

5.      That the costs of this action, including reasonable attorneys' fees in accordance with North Carolina General Statute § 75-16.1, and any expert witness fees, be taxed by the Court as against the Defendant;

6.      That Plaintiff and Class Members recover prejudgment and post-judgment interest at the highest rate allowed by law on the foregoing sums;

7.      For trial by jury on all issues so triable; and

8.      For such other and further relief as the Court deems just and proper.

Respectfully submitted this the 3rd day of December, 2010.

**SHIPMAN & WRIGHT, L.L.P.**


/s/William G. Wright
**GARY K. SHIPMAN**
*gshipman@shipmanlaw.com*
NC State Bar No.: 9464
**WILLIAM G. WRIGHT**
*wwright@shipmanlaw.com*
NC State Bar No.: 26981
575 Military Cutoff Road, Suite 106
Wilmington, North Carolina 28405
Telephone: (910) 762-1990
Facsimile:  (910) 762-6752


Benjamin R. Bingham
Texas State Bar No. 02322350
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, Texas 78212
Telephone: (210) 224-2885
Facsimile: (210) 224-0141
*ben@binghamandlea.com*

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing **<u>AMENDED</u>**

**<u>COMPLAINT</u>** by depositing a copy thereof in an envelope bearing sufficient postage in the

United States mail addressed to the following person at the following address which is the last

address known to me:

Remington Arms Company, Inc.
c/o Registered Agent: CT Corporation System
150 Fayetteville Street
Box 1011
Raleigh, NC 27601
*Defendant*


This the 3rd day of December, 2010.

**SHIPMAN & WRIGHT, L.L.P.**



/s/William G. Wright
**GARY K. SHIPMAN**
*gshipman@shipmanlaw.com*
NC State Bar No.: 9464
**WILLIAM G. WRIGHT**
*wwright@shipmanlaw.com*
NC State Bar No.: 26981
575 Military Cutoff Road, Suite 106
Wilmington, North Carolina 28405
Telephone: (910) 762-1990
Facsimile: (910) 762-6752

Benjamin R. Bingham
Texas State Bar No. 02322350
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, Texas 78212
Telephone: (210) 224-2885
Facsimile: (210) 224-0141
*ben@binghamandlea.com*

*Attorneys for Plaintiff*
