**UNITED STATES DISTRICT COURT**
**FOR THE**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| RONNIE MAXWELL, on behalf of himself and others similarly situated, | |
| Plaintiff, | |
| vs. | Civil Action No.: 1:10-CV-00918-UA-LPA |
| REMINGTON ARMS COMPANY, INC., | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NOW COMES the Plaintiff RONNIE MAXWELL, by and through undersigned counsel of record, and hereby submits this response to Defendant's Motion to Dismiss.

## I. NATURE AND STATEMENT OF THE CASE

This is a class action brought by the Plaintiff on behalf of himself and all others similarly situated who purchased one or more Remington 597 17 HMR semi-automatic rifles (hereafter "the subject rifle(s)"). This lawsuit was filed against Defendant Remington on November 29, 2010, seeking damages and/or other remedies for Remington's violations of the Magnuson Moss Warranty Act, Unjust Enrichment and the use of Unfair and Deceptive Trade Practices in the sales of these Remington products. On December 3, 2010, prior to service of a responsive pleading, Plaintiff filed an Amended Class Action Complaint (hereinafter, "Complaint"). On January 20, 2011, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This matter is presently before the Court on this motion to dismiss.

## II. STATEMENT OF THE FACTS

Remington's marketing materials contained numerous representations regarding the

rifle and its ammunition including, *inter alia*, the following:

- "No other arms and ammunition manufacturer combines so much tradition and experience with innovative technology and precision craftsmanship."

- "The reasons for choosing Remington are as numerous as the models of guns and types of ammunition we make. Some say it's the legendary accuracy. Some say it's the unbeatable value. . . . [W]e remain unwavering on our dedication to producing firearms, ammunition and accessories which embody the highest standards in quality and are instilled with the spirit of a legendary brand – Remington"

- **"Model 597™ – Where Technology Meets Craftsmanship**

  Whether you use it for hunting, serious target shooting or an afternoon of plinking, one thing is certain: This is no ordinary rimfire rifle. Far from it. In fact, the Model 597™ is easily the most advanced autoloading rimfire rifle ever built. . . . The difference starts with our proprietary bolt-guidance system. It features a unique set of twin tool-steel guide rails (other brands feature only grooved aluminum slots). Because steel is stronger and far more resistant to wear, the result is not only better stability, feeding reliability and accuracy right out of the box, but significantly superior performance through time."

  " . . . . The bolt, hammer and sear of the Model 597 all feature an exclusive Teflon®/nickel plating for absolutely smooth, dependable operation and an ultra-crisp trigger pull (that stays that way). To assure reliable, long-life accuracy, we've also incorporated a unique positive-locking, permanently rigid barrel attachment clamp. . . . Completing the breakthrough design are an innovative last-shot magazine."

- **"Model 597™ 22LR and Magnum Version Metal Magazine"**

  "That the metal magazine ". . . holds ultra-precise dimensional tolerance and yields an exceptional surface finish. Moreover, its extreme rigidity is ideal for demanding high-volume use. . . ."

- "...the 597 magazine has 8-shot(magnum) and 10-shot(long-rifle) capability. Their extreme rigidity is ideal for demanding, high-volume use."

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

- "**Rimfire – From International competition to Tin Can Demolition.**

   Over the years, no manufacturer has been responsible for more advancements in rimfire ammunition than Remington®. No doubt this is because we give our rimfire ammunition the same meticulous manufacturing attention as our centerfire ammunition. . . . Whether its hunting, plinking or competing, Remington rimfire cartridges offer consistently outstanding performance.

- "At Remington, we're more than just the industry leader in quality and reliability. By bringing you industry firsts, like the Yellow Jacket® and Viper® hyper velocity ammunition, we've solidified our reputation as leaders in innovation, too. Our commitment to bring you the hottest ammunition on the market continues with the 17 HMR."

Complaint ¶ 5.

Due to safety and performance concerns, Remington recalled all subject rifles and their ammunition. In the recall, Remington issued a notice to consumers instructing them to "immediately stop using your Remington Model 597 17 HMR semi-automatic rifle" and to "immediately discontinue use of Remington 17 HMR ammunition." *See* Complaint ¶ 7 (incorporating Remington recall notices and warnings); Ex. A to Def.'s Motion (one such recall notice). The recall notices stated, *inter alia*, upon return of their rifles, Remington would provide owners a coupon valued at $200 or $250 (depending upon the model rifle returned) good toward purchase of a replacement Remington firearm. Id. The coupons did not provide consumers a cash refund of any sort and required consumers to buy another Remington product. Id.; Complaint ¶ 35.

Remington does not make a gun comparable to the subject rifle Plaintiff and each Class member specifically chose to buy, and therefore, cannot replace using the coupons. Complaint ¶ 36. Remington also cannot sell a subject rifle due to inherent problems with the ammunition in semi-automatic weapons, and therefore, consumers are forced to spend their coupon on a weapon type they did not intend to purchase. Complaint ¶ 37. Remington's coupon also does not represent the full value of the weapon or the ammunition at the time they were purchased. Id. Plaintiff alleges his two rifles have been

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

rendered valueless by virtue of the safety recall as they are too dangerous to shoot or to sell. Complaint ¶ 8.

## III.     QUESTION PRESENTED

Whether the complaint states a claim for relief pursuant to Rule 12(b)(6)?

## IV. ARGUMENT

### A.     STANDARD FOR MOTION TO DISMISS.

Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim upon which relief may be granted unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).  In order to survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007).  In evaluating a motion to dismiss, "a court must accept the factual allegations of the complaint as true." GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).  "To survive a motion under Fed.R. Civ. P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997).  Plaintiff clearly alleges claims for which he is entitled to relief, and accordingly, this Court should deny Defendant's Motion to Dismiss.

### B.     PLAINTIFF STATES A CLAIM FOR RELIEF UNDER THE MAGNUSON-MOSS WARRANTY ACT (MMWA).

The purpose of the MMWA, 15 U.S.C. §2301 *et seq.*, is (1) to make warranties on consumer products more readily understood and enforceable and (2) to provide the Federal Trade Commission with a means of better protecting consumers. H.R. Rep. No. 93-1107, (1974) U.S.C.C.A.N. 7702; People ex rel. Mota v. Central Sprinkler Corp., 174

F.Supp.2d 824, 827 (C.D.Ill. 2001). Pursuant to the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief…" in federal court. 15 U.S.C. § 2310(d).

Although the Act creates a separate federal cause of action for breach of warranty, courts look to the relevant state law to determine the meaning and creation of any warranty. *See* Gusse v. Damon Corp., 470 F.Supp.2d 1110, (C.D.Cal.2007). It is "beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson-Moss." Carlson v. Gen. Motors Corp, 883 F.2d 287, 291 (4th Cir. 1989); Bussian v. DaimlerChrysler Corp., 411 F.Supp.2d 614 (M.D.N.C. 2006). In other words, where a plaintiff has stated a claim for breach of warranty under state law, he has stated a claim for violation of the MMWA.

Defendant grossly misstates the elements of a claim for breach of an ***express*** warranty, and instead, applies the standard for breach of ***implied*** warranty (and for a claim under the products liability statutes).[1] Defendant mistakenly contends that for a breach of express warranty: "[b]oth states' law require proof of (1) the existence of a warranty, (2) reliance by the purchaser on this warranty, (3) its breach, and (4) a loss proximately caused by the breach"). *See* Defendant's Memorandum of Law in Support of Its Motion to Dismiss [DE 13] (hereinafter, "Defendant's Memo"), at 6. This is wrong. Under the UCC for both Texas and North Carolina, express warranties by the seller are created as follows:

---

[1] Although a claim for breach of express warranty has some overlap to a products liability claim, they are legally distinct claims. In Texas, products liability claims are codified in the Texas Civil Practices and Remedies Code, §§ 82.001 *et seq.*, whereas breach of warranty claims are found in the Tex. Business and Commercial Code, § 2.313 *et seq.* In North Carolina, the requirements for a claim for products liability are codified in Chapter 99B of our General Statues, N.C.G.S. §§ 99B-1 *et seq.*, whereas warranty claims are codified in Chapter 25 (Uniform Commercial Code), N.C.G.S. §§ 25-1-1 *et seq.*

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Tex. Bus. & Com. Code Ann. § 2.313(a); N.C. Gen. Stat. § 25-2-313 (1).

Thus, in order to state a claim for breach of an express warranty under Texas law, a plaintiff must allege (1) an express affirmation of fact or promise relating to the goods, (2) such affirmation of fact or promise by seller became a part of basis of bargain, (3) plaintiffs relied upon said affirmation of fact or promise, (4) the goods failed to comply with the affirmation of fact or promise, (5) plaintiffs were injured by such failure of product to comply with express warranty, and (6) such failure was proximate cause of plaintiffs' injury. *See* Johnson v. Philip Morris, 159 F.Supp.2d 950, 952 (S.D. Tex. 2001); Sweco, Inc. v. Continental Sulfur and Chemical, 808 S.W.2d 112, 115 (Tex. App. 1991) (finding five elements by combining "basis of bargain" and "reliance" into one element); General Supply & Equip., Inc. v. Phillips, 490 S.W.2d 913 (Tex. App. 1972); *see also* Harbour Point Homeowners' Ass'n, Inc. ex rel. Bd. of Directors v. DJF Enterprises, Inc., 697 S.E.2d 439, 447 (N.C.App.,2010) (N.C. Gen. Stat. § 25-2-313 requires (1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and this express warranty was breached by the defendant).

By contrast, a products liability claim premised on the contract principles of warranty and a claim for breach of implied warranty require the plaintiff to prove (1) the defendant warranted the product to plaintiff, (2) there was a breach of that warranty in that the product was defective at the time it left the control of the defendant, and (3) the

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

defect proximately caused plaintiff damage. *See* Tex. Civ. Prac. & Rem. §§ 82.001 (products liability) and Tex. Bus. & Com. Code §§ 2.314 (implied warranty of merchantability) and official comment 13 thereto; Red Hill Hosiery Mill, Inc. v. MagneTek, Inc. 138 N.C. App. 70, 75, 530 S.E.2d 321, 325 (2000) (citing 1 M. Stuart Madden, Products Liability § 1.1, at 5 (2d ed. 1988)). The main distinction between a claim for breach of express warranty (Plaintiff's claim here) and products liability or implied warranty of merchantability claims is that in the former, the plaintiff need not allege a physical injury to the plaintiff caused by the product's defect.

An "express warranty" is created when the seller makes affirmation of fact or promise to the buyer which relates to goods sold and warrants conformity to that affirmation or promise. Lujian v. Tampo Mfg. Co., Inc., 825 S.W. 2d 505 (Tex. App. 1992). An express warranty need not be a formal clause in a contract; it can be made orally or in less formal writings, such as in a sales brochure. Church & Dwight Co., Inc. v. Huey, 961 S.W.2d 560 (Tex. App. 1997).

Plaintiff alleges sufficient facts demonstrating an affirmation of fact or promise relating to the goods was made by Remington. Remington's advertising materials contained numerous representations regarding the subject rifle and its ammunition that constitute a "written limited warranty" as defined under the Act. Complaint ¶¶ 5, 20. Paragraph 5 of the complaint explicitly sets forth various representations contained in Remington's advertising and sales brochures that make express warranties concerning the products' quality, safety, and other characteristics.

Moreover, whether the seller's affirmation or promise concerning the product amounts to a warranty and whether such statements formed a basis of the bargain are usually questions of fact for the jury, and thus, inappropriate for dismissal on this motion to dismiss. *See* PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd Partnership, 146 S.W. 3d 79, 100 (Tex. 2004); *see also* Bussain v. DaimlerChrysler Corp., 411 F.Supp.2d 614 (M.D.N.C. 2006) ("at this early stage of the proceedings [on a motion to

dismiss], plaintiff has alleged sufficient facts to state a claim of breach of express warranties based on defendants' representations in advertisements"). Accordingly, for purposes of this motion, Plaintiff has sufficiently alleged factual allegations to meet the first element of an express warranty.

The next element in a claim for breach of express warranty is that the affirmation of fact or promise becomes "part of the basis of the bargain." Tex. Bus. & Com. Code § 2.313; Johnson, 159 F.Supp. 2d at 952. Nowhere in section 2.313 does the statute use any form of the word "reliance." Nevertheless, Defendant incorrectly argues that under Texas law, "[r]eliance is . . . not only relevant to, but an element of proof of plaintiffs' claims of breach of express warranty." (Memo. 12) In 2004, the Texas Supreme Court stated, "[w]hether or not reliance is an essential element of a breach-of-warranty claim is ... undecided in Texas." PPG Industries, Inc, 146 S.W. 3d at 111 (concurrence); Compaq v. Lapray, 135 S.W.3d 657, 675 (Tex. 2004).

In fact, some courts in Texas interpret these terms to mean merely "something rather *like* [reliance]," PPG Industries, Inc, 146 S.W. 3d at 111 (Tex. 2004) (emphasis added), while other courts have found that reliance is *not* required in a claim for breach of express warranty. *See* Sweco, 808 S.W. 2d at 115; General Supply & Equip., 490 S.W.2d at 917 (mere evidence that seller's advertising stated that panels would not deteriorate in five years supported findings seller made express warranty which were made basis of bargain); McManus v. Fleetwood Enterprises, Inc., 320 F.3d 545, 550 (5th Cir. (Tex.) 2003) (finding split of authority whether U.C.C.'s "basis of bargain" is meant to dispense with the common law's requirement of reliance in express warranty cases); *see also* Tex. Bus. & Com. Code § 2.313, cmt. 3 ("***no particular reliance on [the affirmations] need be shown in order to weave them into the fabric of the agreement***") (emphasis added).

Even assuming reliance or "something rather like reliance" is required, Plaintiff's allegations support this element: "[T]he Defendant intended that the Plaintiff and Class

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

would rely on its false statements and material omissions, and intended to induce the Plaintiff . . . to purchase the ... rifles and ammunition;' and "[b]ased upon Defendant's misrepresentations . . . , Plaintiff and the class believed that Defendant was selling and providing a safe and reliable rifle . . ." Complaint ¶¶ 32, 34. Plaintiff purchased two of the subject rifles. Id. ¶ 4. Plaintiff has alleged sufficient facts to demonstrate the affirmations were made a part of the "basis of the bargain," and therefore, has met the third element of a claim for breach of express warranty.

The next element in a claim for breach of express warranty is "the goods failed to comply with the affirmation of fact or promise." Johnson, 159 F. Supp at 952 *citing* Tex. Bus. & Com. Code § 2.313. Having failed to accurately set out the elements for breach of warranty, Defendant not surprisingly misconstrues the requirements of this element by arguing that "[t]o demonstrate a breach of warranty ***in a product defect case***, a plaintiff must allege facts sufficient to demonstrate not only the existence of the defect but also that the defect has "manifested" itself in ***his*** product." *See* Memo. 6 (emphasis added and in original, respectively). The complaint does ***not*** attempt to allege a claim under the products liability statutes. Defendant's contention that a defect is required is simply inapposite in this breach of express warranty claim.

Neither the existence nor manifestation of a defect is a requirement in a claim for breach of express warranty. *See* Tex. Bus. & Com. Code Ann. § 2.313; Johnson, 159 F. Supp at 952; N.C. Gen. Stat. § 25-2-313(1); Harbour Point, 697 S.E.2d at 447. This is in sharp contrast to the requirement for a claim of breach of implied warranty of merchantability and a products liability claim, which both require a defect. *See* Tex. Bus. & Com. Code § 2.314 (implied warranty of merchantability) and Tex. Civ. Prac. & Ren. §§82.001 *et seq* (products liability); Capetillo v. Crosby County Fuel Ass'n, 407 S.W.2d 335, 338 (Tex. App., 1966); 1 Clark B. and Christopher Smith, The Law of Product Warranties, at § 5.5 ("For a product to flunk the [implied warranty of] merchantability test, it must contain an inherent defect. This is in sharp contrast to the warranties found in

SHIPMAN & WRIGHT, L.L.P.
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

§§ 2-313 [express] and 2-315 [warranty of fitness for a particular purpose], neither of which necessarily requires a defect.)  Rather, a breach of express warranty claim merely requires that the "goods failed to comply with the affirmation or promise." <u>Johnson</u>, 159 F. Supp at 952.

Here, the subject rifles and ammunition purchased by Plaintiff failed to comply with the express affirmations made by Remington.  In particular, Remington made express affirmations, *inter alia,* that its firearms and ammunition are made with "precision craftsmanship" and "embody the highest standards in quality." Complaint ¶ 5(a)-(b)).  Remington also represented that certain components in its firearms were made of "steel [which] is stronger..." resulting in "significantly superior performance through time," <u>Id</u>. ¶ 5(c), and the magazine in its Model 597 HMR rifle has "extreme rigidity ... ideal for demanding high-volume use…." <u>Id.</u> ¶5(d)-(e).  Defendant's products failed to comply with such affirmations in that, "[d]ue to safety and performance concerns, Remington recently recalled all Remington Model 597 17 HMR rifles and the ammunition for them." <u>Id.</u> ¶ 7.  Specifically, Remington instructed consumers to "immediately stop using your Remington Model 17 HMR semi-automatic rifle" and to "immediately discontinue use of Remington 17 HMR ammunition." <u>Id.</u>  The complaint incorporates all "Remington's recall notices and published warnings . . . as if set out herein *verbatim.*" <u>Id.</u>  In other words, the rifles and ammunition that can no longer be used fail to comply with Remington's express representations that those products are, for example, of "high quality" or that they possess "significantly superior performance through time."  Given the foregoing allegations in the complaint, Plaintiff has sufficiently alleged the goods fail to comply with the express warranties.

By contrast, all the cases cited by Defendant are distinguishable because they either do not involve a breach of express warranty (only implied where there is no inquiry as to the goods failure to comply with express warranties) or because the plaintiff did not allege specific express representations. *See* Memo. 9-10 n. 6 (*e.g.* <u>Martin v. Home Depot,</u>

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

369 F. Supp. 2d 887 (W.D. Tex. 2005) (no express representations made about safety of CCA treated wood); Carlson, 883 F.2d 287 (asserting only breach of implied warranty of merchantability).)

Defendant next argues Plaintiff relies solely upon the recall by Remington to establish a breach of any applicable warranties. *See* Def.'s Memo, at p.7. This is incorrect. The applicable element in a claim for breach of express warranty is "that the goods failed to comply" with the affirmation of fact or promise, rather than defendant's misstated concept of breach. The Complaint alleges because of certain "safety and performance" issues including those referenced in Remington's recall notices and published warnings, the products failed to conform to Remington's warranties. (¶ 7) As a result of this, Remington recalled the goods. Id.

Defendant's reliance on the unpublished decision of Ryan v. Brookdale Int'l Systems, Inc., 230 Fed. Appx. 366 (5th Cir. Apr. 12, 2007), is misplaced. First, unlike the case at bar, which sets forth specific affirmations made by Remington warranting the rifle's "reliability," "dependable operation," and "long-life," (to name just a few), (Complaint, ¶ 5), the Ryan court makes no mention of the smoke hood manufacturer having made any express affirmations as to the quality of its product.[2] Indeed, the manufacturer marketed its smoke hoods as having a limited shelf-life of only five or eight years and being designed only to be used once. 230 Fed. Appx. at 367. Moreover, although the plaintiff in Ryan alleged a breach of warranty claim, Ryan was decided on an "injury in fact" analysis for purposes of standing. 230 Fed. Appx. at 367. No published opinions involving Texas law make such a drastic departure from the stated elements of a breach of express warranty under Texas law. Thus, the Complaint alleges sufficient facts demonstrating Defendant's products failed to comply with the express

---

[2] Moreover, the Fifth Circuit in Ryan stated its opinion should not be published and is not precedent except under certain limited circumstances set forth in 5th Circuit Rule 47.5.4 [e.g., the doctrines of res judicata, collateral estoppel, or law of the case]. That clearly is not the case here.

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

affirmations it made.

The next elements in a claim for breach of express warranty are that a plaintiff must demonstrate he was injured by the failure of the product to comply with the stated warranties and such failure was a proximate cause of his injuries. Johnson, 159 F. Supp. 2d at 952; Crosbyton Seed Co. v. Mechura Farms, 875 S.W.2d 353, 361 (Tex.App.,1994) (elements of breach of express warranty include, *inter alia*, that the goods failed to comply with the affirmation, that the buyer was financially injured, and that the breached affirmation was a proximate cause of the injury). Defendant again misrepresents the requirements of these elements and instead applies (inappropriately) the standard under North Carolina's breach of implied warranty claims or that for 'injury in fact' for purposes of the Constitutional requirement of "standing."[3] Memo. 11. As explained above and further below, this inquiry is inapposite in a breach of express warranty claim.[4]

Plaintiff has alleged sufficient facts to demonstrate a failure to comply with the express warranties proximately caused the injury. The Complaint alleges Remington warranted the subject rifle to be of the "highest standards in quality," with "reliable, long-life," accuracy, and that the "extreme rigidity" of its magazine is "ideal for demanding high-volume use…." ¶ 5. Plaintiff purchased two of the Remington rifles and its ammunition. Id. ¶ 4. Because of "safety and performance concerns," the rifles and ammunition failed to comply with the stated warranties, leading Remington to issue a safety recall of those products. Id. ¶¶ 6-8. Plaintiff has been injured by such failure in that the products have been "rendered valueless" and that "they are too dangerous to

---

[3]Defendant brings this motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Consideration of the Constitutional requirement of "standing" is a question of subject-matter jurisdiction and is thus beyond the scope and outside the standard for a Rule 12(b)(6) motion. Any arguments by Defendant to dismiss the complaint based on the "standing" requirement should thus be stricken from its motion.

[4]Defendant's failure to address Texas law is particularly telling, since it concedes that Texas law is the proper choice of law in this MMWA claim. *See* Def.'s Memo., at pp 5-6, n. 5

SHIPMAN & WRIGHT, L.L.P.
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

shoot or sell." Id. ¶ 7. In other words, had the products complied with the warranties, Plaintiff would not now be stuck with rifles and ammunition that are worthless and that he cannot use or sell. Plaintiff seeks actual damages "consisting of the actual purchase price" or "replacement costs" of the products. Id. ¶ 21 and Prayer ¶ 2. Plaintiff has alleged sufficient facts demonstrating the failure of the products to comply with stated warranties was a proximate cause of his injuries.

All of the cases cited by Defendant are inapposite to this breach of express warranty claim. *See e.g.,* Carlson, 883 F.2d 287 (involves NC's breach of implied warranty of merchantability); Coker v. Daimler Chrysler Corp., 172 N.C. App. 386, 397, 617 S.E. 2d 306, 313 (discussing 'injury in fact' for purposes of standing). Plaintiff has, therefore, stated a claim for breach of an express warranty and a violation of the MMWA.

## C. PLAINTIFF STATES A CLAIM FOR RELIEF UNDER THE NCUDTPA.

Defendant argues Plaintiff's UDTPA claim must fail, because Plaintiff: (1) is not a North Carolina resident; (2) does not identify any unfair or deceptive practice; (3) fails to allege injury or damage; and (4) fails to allege actual reliance. (Memo. 13-16) Defendant is wrong on all accounts. North Carolina's UDTPA is *sui generis*, apparently sounding in tort, but neither wholly tortious or wholly contractual in nature. *See* Bernard v. Central Carolina Truck Sales, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984). To prevail on a claim for unfair and deceptive trade practices, a claimant must allege: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused actual injury to claimant. Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol, 893 F. Supp. 526, 540 (E.D.N.C. 1994); Canady v. Mann, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992).

First, the terms "unfair" or "deceptive" are not precisely defined by statute, but rather the surrounding facts of the transaction and the impact on the marketplace determine if the transaction is unfair or deceptive. Canady, 107 N.C. App. at 260, 419 S.E.2d at 602. An act or practice is "deceptive" if it has the tendency or capacity to

SHIPMAN & WRIGHT, L.L.P.
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

deceive. Norman v. Loomis Fargo & Co., 123 F.Supp.2d 985, 989 (W.D.N.C. 2000). In determining whether a representation is deceptive, its effect on the average consumer is considered. Opsahl v. Pinehurst, 81 N.C. App. 56, 69, 344 S.E.2d 68 (1986). Proof of actual deception is not required. *See* Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Clearly False statements are deceptive, but even a truthful statement may be deceptive, if it has the capacity or tendency to deceive. Pearce v. American Defender Life Ins. Co., 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986). Generally a practice is "unfair" when it offends established public policy, or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See* Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *overruled on other grounds*, Myers & Chapman v. Thomas G. Evans, 323 N.C. 559, 374 S.E.2d 385 (1988). Second, North Carolina requires the act or practice to be in or effecting commerce. Spartan Leasing, Inc. v. Pollard, 101 N.C. App. 450, 460, 400 S.E.2d 476, 480 (1991). "'[C]ommerce' includes all business activities, however, denominated." N.C.G.S. § 75-1.1(b). Finally, to recover damages for unfair and deceptive trade practices, a plaintiff must have suffered "actual injury as a proximate result" of the defendant's conduct. *See* Pearce, 316 N.C. at 470, 343 S.E.2d at 180. Because the statute was intended to enable plaintiffs to recover even when they cannot prove common law fraud, breach of contract, or breach of warranty, the remedies available for unfair and deceptive trade practices are broader than those available under common law. *See* Bernard, 68 N.C. App. at 232, 314 S.E.2d at 585.

The Complaint details a litany of unfair and deceptive practices as Defendant deceptively misrepresented or falsely omitted facts concerning the performance and safety of its rifle and ammunition and its product support. The misrepresentations include but are not limited to statements concerning the rifles' and ammunition's superior design, true value, safety and craftsmanship. Complaint ¶¶ 5, 6, 30, 31. These falsities sufficiently allege a claim for relief under the NCUDTPA as those representations had

SHIPMAN & WRIGHT, L.L.P.
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

the tendency and capacity to deceive and did, in fact, deceive Plaintiff and the Class into purchasing the rifles and ammunition.

Additionally, Defendant knew or should have known its representations were false, its failures to disclose those deficiencies, and its failures to support its products through the its inadequate and self-serving recall. Complaint ¶ 31, 32, 35 These failures to disclose information are considered deceptive as they are equivalent to misrepresentations. *See* Kron Medical Corp. v. Collier Cobbs & Assocs., 107 N.C. App. 331, 420 S.E.2d 192 (1992); South Atlantic Ltd. Partnership of Tennessee, L.P. v. Riese, 284 F.3d 518, 537-38 (4th Cir. 2002) (fact Defendant made no representation of any sort, was precisely why his conduct was "unethical, unscrupulous and directly injurious to consumers" and a violation of North Carolina's UDTPA reasoning the obligations imposed by the UDTPA "create a cause of action broader than traditional common law actions.") (quoting Marshall, *supra.*).   Accepting those allegations as true, Plaintiff adequately alleges Defendant's unfair and deceptive acts.

Defendant cites The "In" Porters, S.A. v. Hanes Printables, Inc. and Sara Lee Corp., 663 F. Supp. 494 (M.D.N.C. 1987), and Ada Liss Group (2003) v. Sara Lee Corp., 2009 WL 3241821 (M.D.N.C. Sept. 30, 2009) for the basis that Plaintiff cannot recover because "this court [allegedly] requires 'an in-state injury to plaintiff before plaintiff can state a valid unfair trade claim.'" (Memo. 13)  First, Defendant entirely misstates the law. *'In' Porters* involved an analysis with one section of the State's long arm statute as applied with the UDTPA and merely stood for the proposition that a foreign plaintiff ('In' Porters – France) could not recover under the NCUDTPA from foreign defendants (Sara Lee –Maryland and Hanes - Delaware) where the only conduct alleged to have violated Chapter 75 occurred outside of North Carolina, 663 F. Supp. at 502-03.  This is clearly not the case here.  Ironically and embarrassingly, Defendant cites the Magistrate Judge's decision that was not ultimately adopted by Judge Tilley on the UDTPA section of the *Ada Liss* opinion. *See* Ada Liss Group (2003) v. Sara Lee Corp., 2010 WL 3910433

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

(M.D.N.C. Apr. 27, 2010). *Ada Liss* involved an exclusive distributorship agreement where an Israeli Plaintiff's sought damages caused to it in Israel by a North Carolina Defendant's conduct. Id. In distinguishing *'In' Porters*, and in denying Defendant's motion to dismiss the UDTPA claim, Judge Tilley analyzed and reached the same decision this Court should in this case; namely where a North Carolina Defendant is alleged to have committed a violation of Chapter 75, "the court does not have to search for an impact on the Plaintiff's state operations or a strong state interest." *Id.* at *13 ("Where the alleged conduct occurred within the State . . . the only further limits on personal jurisdiction are those imposed generally by the due process clause.") Judge Tilley held "[b]ecause the alleged conduct is unmistakably within the intended scope of the UDTP statute, and because the jurisdictional and constitutional issues fatal to jurisdiction in the *'In' Porters* case are simply not present here, Ada Liss's UDTP claim will not be dismissed for want of personal jurisdiction." Id. at *14.

Defendant controlled and directed its unfair and deceptive conduct and practices from its headquarters in North Carolina. (Complaint ¶¶ 2, 38) Accordingly, Plaintiff may bring its claim under the NCDTPA. North Carolina clearly has an interest in assuring that its residents conduct business in an ethical fashion. As in *Ada Liss Group (2003)*, the Plaintiff may assert UDTPA claims against Remington for its conduct that originated and was directed from North Carolina. Complaint ¶¶ 2, 5-7, 38-40.

Defendant argues although Plaintiff alleges misrepresentations,[5] his claim must fail because of a failure to allege actual reliance on those misrepresentations. Defendant does not understand the law of Chapter 75 and misstates what is pled in the Complaint.

The defendant in <u>Cullen v. Valley Forge Life Ins. Co.</u>, 161 N.C. App. 570, 589 S.E.2d 423, (2003), like Defendant in this case, argued the "plaintiff cannot show injury in the absence of reliance on the misrepresentation." Id. at 580, 589 S.E.2d at 431. The

---

[5] Ironically, this argument directly contradicts Defendant's argument Plaintiff does not identify any unfair or deceptive act. (Def.'s Memo. 14)

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

Court of Appeals disagreed and held the statutory language of N.C. Gen. Stat. § 75-1.1 *does not require reliance in order to show causation*. Id. The *Cullen* Court observed "the focus is on the [defendant], not the effect on the [plaintiff]. Moreover, our Courts have clearly held that *actual* deception is not an element necessary under N.C. Gen. Stat. § 75-1.1 to support an unfair or deceptive practices claim. Accordingly, **actual reliance is not a factor**." Id. (emphasis added) (citations omitted); *accord* <u>Bartolomeo v. S.B. Thomas, Inc.</u>, 889 F.2d 530 (4th Cir. 1989) (no need to show actual deception); <u>Pinehurst, Inc. v. O'Leary Bros. Realty</u>, 79 N.C. App. 51, 338 S.E.2d 918, rev. denied, 316 N.C. 378, 342 S.E.2d 896 (1986); *see* <u>Bernard</u>, *supra*.(remedy not dependent on establishing fraud). The Complaint details a litany of false representations by Remington. (Complaint ¶¶ 5, 6, 29, 30) In direct contrast to Remington's representations, the rifle and ammunition in actuality had performance and safety concerns, and thus, Remington had to recall the rifle and ammunition and instructed its consumers to stop using them. (Complaint ¶¶ 6, 7, 31) Defendant intended for Plaintiff to both rely on its misrepresentations and to induce purchase of its rifles and ammunition. (Complaint ¶ 32) In purchasing rifles and ammunition, Plaintiff believed Defendant was selling and providing a safe and reliable rifle, and reasonable consumers, likewise believed the rifles and ammunition would be free from defects and fit for their intended purpose. (Complaint ¶¶ 4, 34) Defendant never informed Plaintiff that in the event of a recall, it would only supply coupons that: (a) do not provide a full and adequate refund; and (b) require consumers to buy another Remington product as Remington does not make a comparable gun, and therefore, cannot replace the gun using the coupons. (Complaint ¶¶ 35, 36) Accordingly, Plaintiff was proximately caused damage, because he purchased dangerous and useless products, the alleged remedial coupons do not represent full the value of the rifle and ammunition as represented, and the coupons require Plaintiff to purchase another Remington product that he did not want. Complaint ¶¶ 35-37 Plaintiff sufficiently alleges proximate causation and injury, and thus, Defendant's argument should fail.

Contrary to Remington's argument, Plaintiff was damaged as soon as he purchased the subject defective rifles and ammunition, and the complaint adequately alleges this injury.  (See Complaint ¶¶ 35-37)  This case is analogous to <u>Coley v. Champion Home Builders Co.</u>, 162 N.C. App. 163, 166-67 590 S.E.2d 20, 22 (2004), where the North Carolina Court of Appeals held the plaintiff was injured when he purchased a defective tie down system and/or when it would have to incur the cost to purchase an alternative safe tie down.  In contrast to Defendant's authorities, Plaintiff does not "seek damages only related to the product itself," but even if he did, North Carolina's Courts have consistently provided recovery under the UDTPA in similar circumstances.  *See* <u>Roane-Barker v. Southeastern Hosp. Supply Corp.</u>, 99 N.C. App. 30, 392 S.E.2d 663 (1990) (measure of damages under Chapter 75 is broader than at common law).

Plaintiff was damaged when: (1) he paid money to purchase an unsafe and useless product; (2) Defendant would not provide a safe replacement; (3) Defendant only offered a coupon for only Remington products that are not the same as the subject rifles and ammunition and are not wanted, and (4) Plaintiff is forced to purchase replacements.  The proper measure of damages for unfair and deceptive trade practices is that which will "restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money." <u>Bernard</u>, 68 N.C. App. at 233, 314 S.E.2d at 585, *quoted in* <u>Poor v. Hill</u>, 138 N.C. App. 19, 35, 530 S.E.2d 838, 848 (2000).[6]

---

[6] Defendant argues the lack of contractual privity between the Parties prohibits Plaintiff's cause of action. Contractual privity *is not* required in order to maintain a cause of action under Chapter 75.  *See* <u>J.M. Westall & Company, Inc. v. Windswept View of Asheville, Inc.</u>, 97 N.C. App. 71, 387 S.E 2d 67 (reciting numerous cases where North Carolina Courts have recognized Chapter 75 causes of action arising outside the context of a contractual relationship between the plaintiff and defendant), *disc. rev. denied*, 327 N.C. 139, 394 S.E.2d 175 (1990).  As the Court of Appeals noted "the proper inquiry is not whether a contractual relationship existed between the parties, but rather whether the defendants' allegedly deceptive acts *affected* commerce. A contractual relationship is not required in order to affect commerce." <u>Id.</u> at 75, 387 S.E.2d at 69.  In this case, Plaintiffs have adequately alleged Defendant's unfair and deceptive acts and practices have affected and continue to affect commerce.  Accordingly, any

SHIPMAN & WRIGHT, L.L.P.
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

*Bernard* was a case, involving the sale of a truck where the seller misrepresented the size of the truck's engine and suitability for long-distance hauling, in which the Court allowed plaintiff to recover the equivalent value of his truck used for a trade-in and the three payments he had made on the truck. This sum, amounting to a full refund of what he had paid the defendant, "restored the plaintiff to his original condition." Id. at 233, 314 S.E.2d at 585-86; *accord* Huff v. Autos Unlimited, Inc., 124 N.C. App. 410, 477 S.E.2d 86 (1996) (purchaser of an unsafe automobile, suffered actual injury by purchasing a car that was neither safe nor reliable and that she had been misled by defendants into believing otherwise); Myers v. Liberty Lincoln-Mercury, Inc., 89 N.C. App. 335, 365 S.E.2d 663 (1988)(UDTPA violation where defendant sold plaintiff a 1982 model but represented car was a 1983 model); Morris v. Bailey, 86 N.C. App. 378, 358 S.E.2d 120 (1987)(allowing recovery of down payment and payments on automobile loan where condition of car was misrepresented).

Chapter 75 allows for a wide recovery of damages where the unfair or deceptive conduct of a party induces another party to make a purchase. Here, Defendant's conduct, in misrepresenting and/or failing to disclose the defects and shortcomings of its rifle and ammunition, resulted in the Plaintiff buying a product he would not have otherwise purchased. If Defendant had disclosed *inter alia* the rifle and ammunition is defectively designed, would not conform to Remington's numerous representations, and is not safe, Plaintiff would not have purchased the rifles and ammunition. By misrepresenting and/or failing to disclose this material information, Defendant induced consumers to purchase its products. (R. 18-19) Under North Carolina law, this is compensable, and Plaintiff's allegations are sufficient to allege that injury.

---

allegation that contractual privity is required in order for Plaintiffs to maintain their cause of action should be disregarded. *See e.g.* State ex. rel. Edmisten v. Zim Chemical Co., Inc., 45 N.C. App. 604, 263 S.E.2d 849 (1980)(court properly awarded restitution to indirect purchasers of misbranded antifreeze, where court in effect transferred the restoration due two direct purchasers to their subsequent buyers who had suffered actual loss).

SHIPMAN & WRIGHT, L.L.P.
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

**D.      PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT.**

On a motion to dismiss at the ***pleading*** stage, where the existence of the contract is still in dispute, pleading inconsistent claims is explicitly allowed under Rule 8(d) of the Federal Rules of Civil Procedure, which provides "[a] party may state as many separate claims or defenses as it has, regardless of consistency." *See* <u>Infowise Solutions, Inc. v. Microstrategy, Inc.</u>, 2005 WL 2445436, *7(N.D.Tex.)(inconsistent pleading permissible). In contrast to here, both <u>Woodward v. Southwest States, Inc.</u>, 384 S.W.2d 674 (Tex. 1964) and <u>City of Harker Heights</u>, involve decisions made at the ***recovery*** stage.  <u>Pritchett & Burch, PLLC v. Boyd,</u> 169 N.C. App. 118 (2005) is similarly unavailing, as <u>Pritchett</u> does not even stand for the proposition that a party cannot recover on inconsistent claims. Rather in that case, the court found the plaintiff was not entitled to recover fees under a *quantum meruit* theory because the contingency (obtaining a favorable settlement) had not occurred. <u>Id.</u>

Plaintiff's complaint demonstrates he conferred a benefit directly on Remington. Complaint ¶¶ 24-25 (plaintiff paid cash or its equivalent and to allow Remington to keep "the cash or its equivalent . . . would unjustly enrich Defendant").  Defendant's argument that Plaintiff fails to allege a "direct benefit" is unpersuasive. In ruling on a motion to dismiss, "the allegations of the complaint must be construed favorably to the pleader," and the complaint need only state "enough facts to state a claim to relief that is plausible on its face." <u>Twolmby</u>, 550 U.S. at 570.  Granting dismissal of this claim based on Defendant's assertion it does not sell firearms directly to the general public contradicts the standards on a motion to dismiss that all allegations of the complaint be accepted as true and interpreted "favorably to the pleader."  The complaint alleges sufficient facts to state a claim for unjust enrichment.

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

Respectfully submitted this the 14th day of February, 2011.

**SHIPMAN & WRIGHT, L.L.P.**
575 Military Cutoff Road, Suite 106 – Wilmington, North Carolina 28405

**SHIPMAN & WRIGHT, L.L.P.**

/s/William G. Wright
**GARY K. SHIPMAN**
*gshipman@shipmanlaw.com*
NC State Bar No.: 9464
**WILLIAM G. WRIGHT**
*wwright@shipmanlaw.com*
NC State Bar No.: 26981
575 Military Cutoff Road, Suite 106
Wilmington, North Carolina 28405
Telephone: (910) 762-1990
Facsimile:  (910) 762-6752

Benjamin R. Bingham
Texas State Bar No. 02322350
**Bingham & Lea, P.C.**
319 Maverick Street
San Antonio, Texas 78212
Telephone: (210) 224-2885
Facsimile: (210) 224-0141
*ben@binghamandlea.com*

**Attorneys for Plaintiff**