# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM S. YANCEY, individually and<br>on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REMINGTON ARMS COMPANY, LLC, and<br>FEDERAL CARTRIDGE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12CV477 |

| | | |
|---|---|---|
| DAVID C. HENDERSON, individually and<br>on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REMINGTON ARMS COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12CV437 |

| | | |
|---|---|---|
| RONNIE MAXWELL, on behalf of himself<br>and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REMINGTON ARMS COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:10CV918 |

<u>**MEMORANDUM OPINION AND RECOMMENDATION**</u>
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

Pending before the court are Motions to Dismiss by Defendant Remington Arms Co., LLC ("Remington") in three cases: (1) *Maxwell v. Remington*, No. 1:10-cv-918 (Docket Entry 12); (2) *Henderson v. Remington*, No. 1:12-cv-437 (Docket Entry 13); and (3) *Yancey v. Remington et al*, No. 1:12-cv-477 (Docket Entry 32).[1] Also pending is a Motion to Dismiss by Defendant Federal Cartridge in the single case in which it is a named Defendant, *Yancey v. Remington*. (Docket Entry 53.) Also before the court are the following motions: (1) Motions for Extension of Time to File Class Certification (Maxwell Docket Entry 22; Henderson Docket Entry 30; Yancey Docket Entry 82); and (2) Joint Motion for Leave to File an Amended Consolidated Complaint (Yancey Docket Entry 98).

## I. PROCEDURAL BACKGROUND

Plaintiff Maxwell filed his complaint in the Middle District of North Carolina on November 29, 2010, and filed an amended complaint on December 3, 2010. (Maxwell Docket Entries 1, 8.) Plaintiff Yancey filed his complaint in the Middle District of Tennessee on December 19, 2011. (Yancey Docket Entry 1.) Plaintiff Henderson filed his complaint in the Northern District of Texas on January 31, 2012. (Henderson Docket Entry 1.)

---

[1] By Order dated June 25, 2013, the three cases were consolidated for purposes of discovery and other pretrial matters. (*See* Yancey Docket Entry 113.) This Recommendation addresses dispositive motions in all three cases. For ease of disposition, the Court will make its Recommendation in one document, but will address issues unique to each case as necessary. This Recommendation shall be filed in all three cases.

On May 1 and May 4, 2012, respectively, the parties in *Henderson* and *Yancey* filed joint stipulations[2] to transfer those cases to this District pursuant to 28 U.S.C. § 1404(a); orders transferring the cases were entered by the respective courts. (Yancey Docket Entries 64, 65; Henderson Docket Entries 24, 25.) Prior to the transfer, Defendant Remington filed motions to dismiss in *Henderson* and *Yancey* (Henderson Docket Entry 13; Yancey Docket Entry 32) and Defendant Federal Cartridge filed a motion to dismiss in *Yancey*. (Yancey Docket Entry 53). Other motions have also been filed in all three cases, including motions for extensions of time to file class certification and motions to file an amended consolidated complaint. A motions hearing was held on June 19, 2013. By order of this court on June 25, 2013, the cases were consolidated for purposes of discovery and other pretrial matters, in accordance with Fed. R. Civ. P. 42(a). (Docket Entry 113.) Under this Order, *Yancey* was designated as the lead case in this matter, and all subsequent filings and pretrial matters were to be docketed in the lead case. Federal Cartridge, however, remains a Defendant only in *Yancey*. The remaining motions were taken under advisement.

Plaintiffs filed this putative class action[3] suit against Remington and Federal Cartridge after a voluntary recall of Remington Model 597 semi-automatic rifles chambered for .17 HMR ammunition. Plaintiffs Maxwell and Yancey assert three claims: (1) violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss") (breach of warranty); (2) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); and (3) unjust

---

[2] Federal Cartridge neither consented to nor opposed transfer in *Yancey*. (*See* Yancey Docket Entry 64.)
[3] This is a putative class action because Plaintiffs' class has not been certified.

3

enrichment.  Plaintiff Henderson asserts two claims:  (1) violation of Magnuson-Moss; and (2) unjust enrichment.

## II.  FACTUAL BACKGROUND

Defendant Remington is a firearm and ammunition company headquartered in Madison, North Carolina.  (Yancey Compl. ¶ 16.)   Defendant Federal Cartridge (previously identified as Cascade Cartridge, Inc.) is an ammunition company headquartered in Louisville, Kentucky.  (*Id.* ¶ 17.)  Remington manufactured the Remington Model 597 semi-automatic rimfire rifle at issue in this case.  In August 2009, Remington issued a "Safety Warning and Recall Notice" for Model 597 rifles chambered for 17 HMR ammunition (the "Model 597 17 HMR rifle").  (*Id.* ¶ 23.)   The recall was prompted by Remington receiving notice from Federal Cartridge, the only manufacturer of 17 HMR ammunition, that for safety reasons the ammunition was not suitable for use in any semi-automatic firearm. (*Id.* ¶ 24.)  Remington's subsequent  recall notice, published in several sporting and shooting magazines and posted on its website stated that "[i]n light of the ammunition manufacturer's notice, it is very important that you immediately stop using your Remington Model 597 17 HMR."   Rifle owners were offered coupons in the amount of $200 or $250, depending upon the stock material of their returned firearm.

*Plaintiff William S. Yancey – Lead Case, No. 1:12cv477*

Plaintiff Yancey alleges that his father purchased a Remington Model 597 17 HMR rifle in mid-2005. (Yancey Compl. ¶ 30.)   Yancey resides in New Hanover County, North Carolina; his father resides in Tennessee.  Yancey alleges that the rifle was at some point transferred to him, though it remained in Lewisburg, Tennessee for the seven years prior to

4

this lawsuit. (*Id.* ¶¶ 20, 31.) Plaintiff alleges that his rifle exploded after the date of the recall and that he and another person were physically injured by the explosion. (*Id.* ¶ 36.)[4]

*Plaintiff Ronnie Maxwell – Case 1:10cv918*

Plaintiff Maxwell, a Texas resident, alleges that he purchased two Remington manufactured Model 597 .17 HMR semi-automatic rifles for consumer use. (Maxwell Am. Compl. ¶ ¶ 2, 4, Docket Entry 8.) Plaintiff Maxwell filed his complaint in this district on November 29, 2010 (Docket Entry 1) and filed an amended complaint on December 3, 2010. (Docket Entry 8.)

*Plaintiff David C. Henderson – Case 1:12cv437*

Plaintiff Henderson, a Texas resident, originally filed his complaint in the Northern District of Texas on January 31, 2012. (Henderson Compl., Docket Entry 1.) Plaintiff Henderson alleges that he purchased a Remington Model 597 .17 HMR semi-automatic rifle with ammunition "in or around 2007 at a Cabela's store in Fort Worth, Texas." (Henderson Compl. ¶¶ 20, 30.) Between the time of purchase and November 2011, Plaintiff alleges that his rifle was "used sparingly" and "stored continuously in Tarrant County, Texas." (*Id.* ¶ 31.) Plaintiff Henderson alleges that on November 19, 2011, he was shooting his rifle when the rifle "burst, with smoke coming out of the ejection port and debris coming out of the bottom of the gun, causing Plaintiff to sustain powder burns to his left wrist." (*Id.* ¶ 26.)[5]

---

[4] Plaintiff Yancey is not seeking damages for physical injuries.
[5] Plaintiff Henderson is not seeking damages for physical injuries.

## III. ANALYSIS

### A. Choice of Law

A federal district court sitting in diversity generally applies the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). As part of that principle, the federal court must also apply the forum state's choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). However, when cases are transferred from another district, the transferee court applies the law of the state in which the transferor court is located. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."); *see also In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 8-11-mn-02000-JMC, 2013 WL 1827923, at *2 (D.S.C. Apr. 30, 2013) (citing Manual for Complex Litigation § 20.132.); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (stating that "under the rule of *Van Dusen*, a transferee court applies the substantive state law, including choice of law rules, of the jurisdiction in which the action was filed.") However, in *Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004), the Fourth Circuit distinguished transfer for the convenience of the witnesses pursuant to § 1404(a)[6] from cases where the transfer is made pursuant to the first-filed doctrine. *Id.* at 600. In *Volvo*, the Fourth Circuit

---

[6]  28 U.S.C. § 1404(a) provides as follows:
   For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

expressed uncertainty as to whether "the *Van Dusen* precedent should be blindly and mechanically applied," and strongly suggested that application of choice of law rules of the forum where the litigation was first filed is proper.[7] *Id.* at 600-01.

This action is comprised of three putative class actions, filed by plaintiffs from three different states (North Carolina, Tennessee and Texas). Each case is predicated on diversity jurisdiction and was filed in federal court. However, it appears that the action was transferred to this district, where the first action was filed, because the parties stipulated to the transfer. Like *Volvo*, therefore, this case is not a typical § 1404(a) convenience-of-the-witnesses transfer. Rather, the parties themselves stipulated to transfer of the cases to this district, where the first case was filed and where Remington is headquartered. (*See* Remington Motion to Transfer, Yancey Docket Entry 34; Henderson Docket Entry 17). Thus, *Van Dusen* can be distinguished. As such, under the circumstances of this case, the Court will apply North Carolina choice-of-law rules.

Under North Carolina law governing contracts for the sale of goods, North Carolina law will apply if the transaction bears "an appropriate relation to the State." N.C. Gen. Stat. § 25-1-301(b). North Carolina courts have interpreted this phrase to mean that the law of the state with the "most significant relationship" to a contract or warranty claim applies. *Boudreau v. Baughman*, 322 N.C. 331, 338-39, 3698 S.E.2d 849, 855-56 (1988). As noted in an earlier case, "[t]here are few North Carolina cases which interpret the meaning of the 'most significant relationship' test, and none employing the test in a warranty dispute that does not involve personal injury." *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F.Supp. 345, 347

---

[7] The Fourth Circuit found it unnecessary to directly reach the issue because it determined that the choice of law rules of the two districts involved were identical.

(M.D.N.C. 1995). In examining this issue, courts look at various factors, including the place of contracting; the place of negotiation; the location of the subject matter of the contract; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the justifiable expectations of the parties. *Id.* (citing *Terry v. Pullman Trailmobile*, 92 N.C. App. 687, 693, 376 S.E.2d 47, 50 (1989)). Here, while the rifles in question were not purchased in North Carolina, Remington's principal place of business is in this state. Plaintiff Yancey is a North Carolina resident. Additionally, and importantly, the Maxwell case, the first case filed, was originally filed in North Carolina and the other two plaintiffs chose to transfer their cases to this district. The parties could reasonably have expected that the law of North Carolina would apply to this action. Furthermore, the parties here concede that in most instances, the substantive law of North Carolina mirrors the law of Texas and Tennessee. Under the particular circumstances of this case, therefore, this court will apply the law of the forum state, North Carolina.

### B. Standard of Review

Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*,

634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face."). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

### C. Magnuson-Moss Warranty Act Claim (Count I) (Breach of Warranty)

### 1. In General

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, creates a cause of action for consumers damaged by "the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d). Magnuson-Moss "calls for the application of state written and implied warranty law" except where the Act prescribes a regulating rule. *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011). The Act supplements, rather than supplants state law. *Id.*

Remington argues that Plaintiffs Henderson and Yancey's breach of warranty claims are time-barred under both the written terms of the warranty and the applicable statute of

limitations. Defendants also argue that Plaintiffs have not suffered a loss and that they have not adequately alleged reliance and basis of the bargain. Defendants further argue that to the extent Plaintiffs are alleging that the failure of Remington's limited warranty has failed of its essential purpose results in a claim for breach of implied warranties of merchantability and fitness for a particular purpose, that claim must fail because Plaintiffs are not in privity with Defendants.[8]

In order to recover for breach of express warranty under state or federal law, a plaintiff must allege that a defect exists, that a warranty covered the item, and that the seller breached the warranty. N.C. Gen. Stat. § 25-2-313; 15 U.S.C. § 2310. *See Butcher v. DaimlerChrysler Co., LLC*, No. 1:08CV207, 2008 WL 2953472, at *3 (M.D.N.C. July 29, 2008).

## 2. Statute of Limitations (Yancey and Henderson)

### a. Remington

In Count I of their complaints, Plaintiffs seek damages for breach of an express written 2-year limited warranty under Magnuson-Moss. As to Plaintiffs Yancey and Henderson, Defendant Remington argues that their warranty claims are barred by the statute of limitations. The Court agrees.

Because Magnuson-Moss itself does not contain a statute of limitations, courts have consistently applied the default limitations found in the Uniform Commercial Code. Under North Carolina law, a breach of warranty claim for the sale of goods is subject to a four-year

---

[8] In *Maxwell*, Defendant Remington also argues that Plaintiff has not adequately pled a manifestation of the defect so as to state a claim for breach of warranty under Texas law. Because the Court is applying North Carolina law, it is not necessary to address this argument.

statute of limitations. N.C. Gen. Stat. § 25-2-725(1). The limitations period begins to run when tender of delivery is made, unless the goods are sold with a warranty for future performance. *See* N.C. Gen. Stat. § 25-2-725(2). If goods are sold with a warranty for future performance, the statute runs from the date on which the defect was or should have been discovered. *Id.* However, the discovery rule does not extend the life of an express warranty beyond its terms. Thus, as to all three Plaintiffs here, the limitations period began to run at the time the rifles were purchased. Defendant Yancey alleges that his rifle was purchased by his father in 2005 (Yancey Compl. ¶ 30) and Defendant Henderson alleges that he purchased his rifle "in or around 2007." (Henderson Compl. ¶ 30). Both Plaintiff Yancey and Henderson filed their complaints in 2012, more than four years after the purchase of their rifles, and after the expiration of the statute of limitations.[9]

Plaintiff Yancey contends that the statute of limitations should be tolled based on Defendant Remington's fraudulent concealment of the defect. This argument is unavailing. The doctrine of equitable tolling of the statute of limitations is to be used sparingly, only in "exceptional cases." *Chao v. Virginia Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002). Indeed, "[a]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Id.* (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Fourth Circuit has "recognized that equitable tolling is appropriate when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Id.* (quoting *Harris*, 209 F.3d at 330). Here, the extraordinary circumstance

---

[9] In his Amended Complaint, Maxwell does not allege any facts regarding the date he purchased or obtained the rifle in question.

which Plaintiff Yancey contends prevented him from filing his claims in a timely manner is the alleged fraudulent concealment of the facts surrounding the alleged defect in the 597 17 HMR rifle.

In order to establish facts supporting equitable tolling based on fraudulent concealment, Plaintiff Yancey would be required to satisfy each element of a three-part test. "Specifically a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton v. Meadow Gold Dairies*, 71 F.3d 119, 122 (4th Cir. 1995); *see also In re Cotton Yarn Antitrust Litigation*, No. 1:04MD1622, 2009 WL 618252, at *4 (M.D.N.C. Mar. 6, 2009). Courts have required that a plaintiff alleging fraudulent concealment must show that the defendant "engaged in affirmative acts of concealment." *See, e.g.*, *Hamilton Cnty Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 319 (6th Cir. 2007).

Plaintiff Yancey has not pled the facts surrounding the alleged fraudulent concealment with sufficient particularity to satisfy the fraud pleading requirements of Fed. R. Civ. P. 9(b). Where a plaintiff fails to provide "the required particulars of who made the statements, to whom the statements were made, and where the statements were made," together with "reasonable and detrimental reliance," motions to dismiss should be granted. *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F.Supp. 2d 436, 477 (M.D.N.C. 2005). Plaintiff Yancey has not made any allegations regarding his due diligence; his sole allegation is that "[a]fter the rifle exploded, Plaintiff learned of the recall." (Yancey Compl. ¶ 238.) Moreover, as noted by Defendant Remington, the recall was issued in August 2009; a

product recall simply does not equate with fraudulent concealment of a defect. *See, e.g.,* *Wiegel v. Stork Craft Mfg., Inc.*, No. 09 C 7417, 2013 WL 2243094, at *8 (N.D. Ill. May 21, 2013) (noting that under Illinois law a recall announcement is not evidence of concealment, for if it "were otherwise, any recall announcement would provide a prima facie case for concealment. . . .")

    The only assertion that Yancey makes regarding Remington's fraudulent concealment refers to entries on "various blogs and online internet communities" in 2011 (Compl. ¶ 34), and one specific entry in an unidentified blog in 2010 in which the poster stated that the magazine of his rifle blew up in his hand and "Remington replaced the rifle two years ago." (*Id.* ¶ 35.) This allegation simply does not meet the requirements for particularized pleading of fraud. Fed. R. Civ. P. 9(b); *see Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1982) (particularity requirement met by alleging time, place and content of alleged fraudulent representation, along with identity of the person making the representation and what was obtained as a result of the representation).[10] Accordingly, the Court finds that the conclusory allegations made by Plaintiff are not sufficient to plead fraudulent concealment so as to toll the statute of limitations.

    This Court recognizes that it is only "[i]n limited circumstances where the allegations of the complaint give rise to an affirmative defense" that such a "defense may be raised under Rule 12(b)(6)." *See, e.g., Richmond, Fredericksburg & Potomac RR. Co. v. Forst*, 4 F.3d 244,

---

[10]     Indeed, as noted by Defendant Remington, the blog entries from 2010 and 2011 tend to undermine any argument of Plaintiffs regarding their own due diligence. Presumably, the information in the blogs was as readily available to Plaintiffs as it was to Remington. *See Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1992) (citing *Wood v. Carpenter*, 101 U.S. 135, 143 (1879) (holding that "the means of knowledge are the same thing in effect as knowledge itself.")

250 (4th Cir. 1993). However, "'[w]here facts sufficient to rule on an affirmative defense' – including 'the defense that the plaintiff's claim is time-barred'– 'are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).'" *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)). Thus, as to Plaintiffs Yancey and Henderson, the Court finds that their claims of breach of express warranties are barred by the statute of limitations. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (where allegations in a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

### b. Federal Cartridge

Defendant Federal Cartridge has also moved to dismiss Yancey's Magnuson-Moss warranty claim on statute of limitations grounds. In his complaint, Plaintiff Yancey makes no allegations as to when he purchased ammunition manufactured by Federal Cartridge (or CCI, its predecessor). In fact, the complaint contains few allegations concerning Federal Cartridge at all; most often, the allegations lump Federal Cartridge in with Defendant Remington in a conclusory fashion. As such, the breach of warranty claims as to Federal Cartridge may be barred by the applicable statute of limitations. However, because the complaint does not show conclusively on its face that the action is time-barred as to Federal Cartridge, it is impossible for this Court to make a determination on this issue.[11] To the

---

[11] Because the Court will recommend that Yancey's warranty claim be dismissed on other grounds, it is not necessary for the Court to decide the statute of limitations argument. *See* discussion *infra* Part C.3.b.

extent that Plaintiff Yancey is claiming a breach of warranty for any ammunition purchased before December 19, 2007, however, that claim would be barred.

Though this court has recommended that Plaintiffs Yancey and Henderson's Magnuson-Moss warranty claims against Remington be dismissed as time-barred, in the interest of judicial economy the Court will consider Defendants' other arguments. Additionally, Remington has not asserted the statute of limitations as a basis for its motion to dismiss as to Plaintiff Maxwell.

### 3. Breach of Express Warranty Claims

### a. Remington

Defendant Remington also avers that dismissal is proper because Plaintiffs have not alleged facts sufficient to plausibly demonstrate that the warranty in this product defect case was actually breached. North Carolina provides that:

> (1) Express warranties by the seller are created as follows:
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole goods shall conform to the sample or model.

N.C. Gen. Stat. § 25-2-313. To establish a claim for breach of an express warranty, a claimant must prove that an express warranty existed upon which it relied in making purchases and that the seller breached said warranty. *See, e.g., Harbor Point Homeowners' Ass'n, Inc. v. DJF Enterprises, Inc.*, 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (2010); *Hall v. T.L. Kemp Jewelry, Inc.*, 71 N.C. App. 101, 104, 322 S.E. 2d 7, 10 (1984). To recover damages for a

breach, a plaintiff must show that the breach proximately caused the loss sustained. *See Rose v. Epley Motor Sales*, 288 N.C. 53, 60, 215 S.E.2d 573, 577 (1975); *City of Charlotte v. Skidmore, Owings & Merrill*, 103 N.C. App. 667, 679, 407 S.E.2d 571, 579 (1991). Further, a buyer must have relied upon a warrantor's statement in order to establish a breach of an express warranty. *Garner v. Kearns*, 257 N.C. 149, 151, 125 S.E.2d 390, 392 (1962).

Defendant Remington argues that Plaintiffs have not, and cannot, adequately allege that they relied on any express warranty from Remington before purchasing the rifles. Indeed, under North Carolina law, "a seller is bound by an express warranty when, and only when, it is made to induce a sale and does induce such sale." *Hollenbeck v. Ramset Fasteners, Inc.*, 267 N.C. 401, 403, 148 S.E.2d 287, 289 (1966). In other words, under North Carolina law, reliance is an essential element of an express warranty claim. Plaintiffs Yancey and Henderson include allegations as to reliance in their complaints, but these allegations refer to reliance on representations regarding Remington's leadership in the industry, and statements like "Model 597 – Where Technology Meets Craftmanship." (Henderson Compl. ¶ 21; Yancey Compl. ¶ 21.) These general statements about Remington's commitment to safety and quality do not specifically refer to the written 2-year limited warranty which forms the basis for Plaintiffs' claims under Magnuson-Moss. Moreover, Plaintiffs have failed to allege any facts showing that they knew of or relied on Remington's express warranty prior to purchasing their rifles. Plaintiff Maxwell's Amended Complaint contains no allegations whatsoever that he relied on an express warranty when he purchased the rifle in question.

Plaintiffs contend that there is a question of fact as to whether or not a breach of warranty occurred, but under *Iqbal* and *Twombly* plaintiffs must set forth the elements of their

claims in their complaints. Merely alleging that a representation became part of the bargain does not satisfy pleading standards under *Iqbal* and *Twombly*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" for the purposes of a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Plaintiffs' vague allegations not only fail to address who relied upon Remington's alleged statements, but also, at least in terms of Yancey, it is clear that Yancey himself could not have relied on any statements from Remington. Reliance, as part of the basis of the bargain, is a required element of a breach of warranty claim. The failure of Plaintiffs' to adequately allege such reliance is fatal to the claim. Accordingly, this court will recommend that Plaintiffs' breach of warranty claims be dismissed for failure to state a claim.

### b. Federal Cartridge

The arguments addressed above apply as well to Federal Cartridge. Additionally, as noted above, Plaintiff Yancey has made no allegations as to a warranty provided by Federal Cartridge, nor does the Complaint contain any allegations as to the breach of any warranty by Federal Cartridge. This failure to plead any facts supporting a breach of warranty by Federal Cartridge is fatal to Plaintiff's claim.

### D. Unfair and Deceptive Trade Practices Act (Count II) (Maxwell, Yancey)

### a. Remington

Plaintiffs Maxwell and Yancey allege that despite Remington's knowledge of the defect in the Model 597 HMR semi-automatic rifle, Remington concealed these problems, and continued to misrepresent the "quality, safety and value of the product," in violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §

75-1.1, *et seq.* (Maxwell Compl. ¶¶ 57-58; Yancey Compl. ¶¶ 56-66.) Remington argues that Plaintiffs' claims for unfair and deceptive trade practices fail as a matter of law because they allege only economic losses, do not identify any unfair or deceptive acts or practices, and do not allege privity with Remington.

The North Carolina UDTPA is intended to prevent "unfair or deceptive acts or practices in or affecting commerce." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 910 (2002). A plaintiff asserting an UDTPA claim must show "(1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Id.* An unfair or deceptive practice is one that "offends established public policy and [is] immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" or which "has the capacity or tendency to deceive." *Bailey v. LeBeau*, 79 N.C. App. 345, 352, 339 S.E.2d 460, 464 (1986) (quoting *Lee v. Payton*, 67 N.C. App. 480, 482, 313 S.E.2d 247, 249 (1984)). "[A] mere breach of contract even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA]." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (citing *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)).

As explained by the North Carolina Court of Appeals:

> Egregious or aggravating circumstances must be alleged before the provisions of the [UDPTA] may take effect. Aggravating circumstances include conduct of the breaching party that is deceptive. Finally, in determining whether a particular act or practice is deceptive, its effect on the average consumer is considered.

*Becker*, 149 N.C. App. at 794, 561 S.E.2d at 910-11 (internal citations omitted). Moreover, "it is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (quoting *Broussard*, 155 F.3d at 347).

A review of the complaints here shows that Plaintiffs have simply not alleged substantial aggravating circumstances sufficient to state a UDPTA claim. Plaintiffs allege that Remington's business practices in advertising, marketing and selling the Model 597 17 HMR semi-automatic rifle as "a superior, safe and valued product . . . free from defects" while misrepresenting its safety and value constitute unfair or deceptive acts within the meaning of the UDPTA. (*See, e.g.*, Yancey Compl. ¶¶ 58-59). These allegations amount to a restatement of Plaintiffs' breach of warranty claims. *See Wachovia Bank & Trust Co. v. Carrington Dev. Assocs.*, 119 N.C. App. 480, 487, 459 S.E.2d 17, 21 (1995) (holding breach of contract, even if intentional, not sufficient to sustain action under UDTPA). In short, Plaintiffs allege that Remington knew that the Model 597 17 HMR semi-automatic rifle and the Remington 17 HMR ammunition would not live up to the terms of the warranty and should have disclosed this fact to consumers. This allegation is simply another way of claiming that Remington breached its express warranty to consumers – the same claim they make in Count I under Magnuson-Moss and which the Court has recommended be dismissed.

Plaintiffs also allege that Remington's decision to offer a coupon for a value less than the purchase price of the rifle and the ammunition, thus requiring "consumers to purchase a new product at a value greater than that of the coupon or for a product which they did not intend to purchase in order to redeem the coupon constitutes unfair or deceptive acts" within the meaning of the Act. (*Id.* at ¶ 60.) These allegations also fail. Providing a coupon for a certain dollar amount as part of a product recall is neither unfair nor deceptive. [12]

Plaintiffs' statements in support of this cause of action are conclusory and fail to state sufficient factual content to support a claim that is factually plausible.[13]

### b. Federal Cartridge

Federal Cartridge also argues that Plaintiff Yancey's North Carolina UDTPA claim must fail because Plaintiff "cannot prove aggravating or egregious circumstances, actual reliance or realized damages." (*See* Fed. Cartridge Br. in Supp. of Mot. to Dismiss at 17, Yancey Docket Entry 54.) Caselaw is clear that "[u]nder North Carolina law, a breach of warranty alone is insufficient to state a UDTPA claim." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009). As discussed above, when a breach of warranty forms the basis for a plaintiff's UDTPA claim, the plaintiff must allege aggravating or egregious

---

[12] To the extent that Plaintiffs argue that their claims are actually misrepresentation claims, this argument also fails because the complaints fail to allege actual reliance, one of the elements of such a claim. *See Sunset Beach Dev. Inc. v. AMEC, Inc.*, 196 N.C. App. 202, 211, 675 S.E.2d 46, 53 (2009).

[13] Defendants also urge this Court to dismiss the UDTPA claims based on the economic loss rule ("ELR"). However, as recently noted by the Fourth Circuit, "the North Carolina courts have never addressed whether UDPTA claims are subject to the ELR, and in the absence of such direction, we are well-advised to rely on other grounds." *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 787, n.5 (4th Cir. 2012); *but cf. Butcher v. DaimlerChrysler Co., LLC*, No 1:08CV207, 2008 WL 2953472, at *4 (M.D.N.C. Jul. 29, 2008) (citing *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 625-26 (M.D.N.C. 2006)) (holding that under the economic loss rule, "the purchaser of an allegedly defective product is prohibited from using tort law, including the UDPTA, to recover purely economic losses.")

circumstances in order to state a claim. Plaintiff Yancey's sole specific allegation as to Federal Cartridge in his UDTPA claim is:

> 59. [Federal Cartridge's] business practices in marketing and selling 17 HMR ammunition for use in the Remington Model 597 17 HMR semi-automatic rifle as a safe product free from defects and fit for its intended purpose while failing to disclose, concealing, suppressing or omitting material facts regarding the quality, safety and value of the product constitute unfair or deceptive acts or practices in or affecting commerce, and thus constitute multiple separate violations of N.C. Gen. Stat. § 75-1.1(a).

(Yancey Compl. at 15, Yancey Docket Entry 1.) This allegation is nothing more than a "run-of-the-mill breach of warranty claim" and as such is insufficient to state a claim under the UDTPA. *See Rohlik v. I-Flow Corp.*, No. 7:10-CV-173-FL, 2011 WL 2669302 at *4 (E.D.N.C. July 7, 2011).

Federal Cartridge further argues that Plaintiff Yancey's UDTPA claim must fail because Yancey does not allege any specific misrepresentations made by Federal Cartridge, beyond the warranty itself, upon which Plaintiff actually relied. (*See* Fed. Cartridge Br. at 18, Docket Entry 54.) Conclusory statements that a defendant "made material misrepresentations" upon which a plaintiff "justifiably relied" are not sufficient to survive a Rule 12(b)(6) motion to dismiss. *See Rohlik*, 2011 WL 2669302, at *4. Under North Carolina law, "[w]here an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused the injury of which plaintiff complains." *Sunset Beach Dev.*, 196 N.C. App. at 211, 675 S.E.2d at 53 (internal quotations and citation omitted); *see also Bumpers v. Community Bank of Northern Virginia*, 747 S.E.2d 220, 226 (N.C. 2013) ("[A] claim under section 75-1.1 stemming from an

21

alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause."). The Complaint here does not identify any specific misrepresentations made by Federal Cartridge, nor does Plaintiff Yancey allege that he or his father relied upon any alleged misrepresentations made by Federal Cartridge. Because Yancey failed to allege actual reliance on misrepresentations allegedly made by Federal Cartridge, the North Carolina UDTPA claim against Federal Cartridge should be dismissed.

### D.  Unjust Enrichment Claim (Maxwell, Henderson and Yancey)

*Remington and Federal Cartridge*[14]

Plaintiffs' unjust enrichment claims are based upon the allegation that Plaintiffs "conferred a tangible economic benefit upon Remington and [Federal Cartridge] by purchasing" the rifle and ammunition and that since the rifle did not perform as promised the coupons offered as part of the recall did not represent "total remuneration" for the amount Plaintiffs paid for the rifle and ammunition. (Yancey Compl. ¶¶ 69-70; Henderson Compl. ¶¶ 58-59.) Plaintiffs claim that it "would be inequitable for Defendants to retain the profits, benefits and other compensation obtained by their wrongful conduct in selling [the rifle and ammunition] . . . and the subsequent coupon." (*See e.g.*, Yancey Compl. ¶ 71; Henderson Compl. ¶ 60; Maxwell Am. Compl. ¶ 25.)

---

[14]  In its brief supporting its motion to dismiss the Yancey Complaint, Federal Cartridge addresses Tennessee law as to unjust enrichment. However, Federal Cartridge states "[t]o the extent North Carolina law applies to Plaintiff's unjust enrichment claims," it would adopt Remington's arguments on this issue. (Fed. Cartridge Br. at 21 n.9, Docket Entry 54.) Accordingly, the Court will consider Remington's argument in deciding whether Yancey has stated a claim for unjust enrichment as to Federal Cartridge.

Defendants argue that Plaintiffs cannot maintain a cause of action for unjust enrichment because an express contract covers the interaction. Defendants further contend that because Plaintiffs do not allege that they conferred a direct benefit to Defendants, a claim for unjust enrichment does not lie.

To prevail on an unjust enrichment claim under North Carolina law, Plaintiffs must show they conferred a benefit on another, the other party consciously accepted that benefit, and the benefit was not conferred gratuitously. *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002); *Metric Constructors, Inc. v. Bank of Tokyo-Mitsibuishi, Ltd.*, 72 Fed. App'x 916, 920 (4th Cir. 2003). "[A] claim for unjust enrichment may not be brought in the face of an express contractual relationship between the parties." *Madison River*, 351 F. Supp. 2d at 446 (citing *Southeastern*, 154 N.C. App. at 331, 572 S.E.2d at 206); *see also Metric*, 72 Fed. App'x at 920. Here, Plaintiffs have pleaded facts alleging that there was an express contract between Plaintiffs and Defendants, and those allegations are incorporated into their unjust enrichment causes of action. (*See* Yancey Compl. ¶ 67; Maxwell Compl. ¶ 23; Henderson Compl. ¶ 56.) Thus, Plaintiffs' claims for unjust enrichment fail as a matter of law and this Court will recommend that the motions to dismiss this claim be granted.

## IV. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the court **GRANT** Defendant Remington's motions to dismiss under Rule 12(b)(6) for failure to state a claim. (Maxwell Docket Entry 12; Henderson Docket Entry 13; and Yancey Docket Entry 32.) **IT IS FURTHER RECOMMENDED** that the court **GRANT** Defendant Federal

Cartridge's motion to dismiss. (Yancey Docket Entry 53). Should the court adopt this recommendation, **IT IS FURTHER RECOMMENDED** that the Motions for Extension of Time to File Class Certification (Maxwell Docket Entry 22; Henderson Docket Entry 30; and Yancey Docket Entry 82) and the Joint Motion for Leave to File an Amended Consolidated Complaint (Yancey Docket Entry 98) be **DENIED** as moot.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
September 30, 2013