IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WILLIAM S. YANCEY, individually and on behalf of others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>REMINGTON ARMS COMPANY, LLC and FEDERAL CARTRIDGE COMPANY, )<br><br>Defendants. ) | Civil Action No.: 1:12-CV-477 |

_____

| | |
|---|---|
| DAVID C. HENDERSON, individually and on behalf of others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>REMINGTON ARMS COMPANY, LLC )<br><br>Defendant. ) | Civil Action No.: 1:12-CV-437 |

_____

| | |
|---|---|
| RONNIE MAXWELL, on behalf of himself and others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>REMINGTON ARMS COMPANY, INC., )<br><br>Defendant. ) | Civil Action No.: 1:10-CV-918 |

_____

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

Plaintiff, Ronnie Maxwell ("Plaintiff" and/or "Maxwell"), by and through counsel of record, pursuant to MDNC LR72.4, Fed. R. Civ. P. 72(b) and 28 U.S.C.A. § 636(b)(1), respectfully submits this Memorandum of Law in support of his Objection to Magistrate Judge's Memorandum and Recommendation.[1] Plaintiff objects to the Magistrate Judge's Memorandum Opinion and Recommendation that the Court grant Defendant Remington's Motion to Dismiss under Rule 12(b)(6) for failure to state a claim, and the Court deny Plaintiff's motions for extension of time to file class certification. This Memorandum demonstrates that the Magistrate Judge erred in concluding that the Plaintiff has not sufficiently plead a claim upon which relief may be granted.

## INTRODUCTION

The basis for Plaintiffs' objections to the Magistrate Judge's Memorandum and Recommendation are summarized here and discussed more fully in Plaintiffs' Memorandum of Law in Opposition to (hereinafter "Pls.' Mem. in Opp."). The Plaintiff's complaint adequately pleads claims for breach of warranty and unfair and deceptive trade practices. The Magistrate Judge erred in holding that reliance is required for Plaintiff's breach of express warranty, and that Plaintiff failed to plead he relied on Remington's advertisements in purchasing the subject rifles. The Magistrate Judge further erred in holding Plaintiff has not plead an Unfair and Deceptive Trade Practice claim. Although Plaintiff was not required to plead reliance for his breach of express warranty claim, he did adequately do so. Similarly, Plaintiff did plead aggravating factors of both unfairness

---

[1] Plaintiffs David C. Henderson and William S. Yancey have settled their claims against Defendant Remington Arms Company, Inc. ("Remington") and Ammunition Accessories, Inc. and will be filing a stipulation of dismissal once the settlement documents are finalized and executed. Accordingly, this memorandum will focus solely upon the Magistrate's rulings concerning Mr. Maxwell's claims against Defendant Remington.

and deception in addition to his breach of warranty claim that are sufficient to satisfy the requirements for his unfair and deceptive trade practices claim.

The standard of review applied to a Magistrate Judge's Recommendations is *de novo*, and the Court may receive new evidence. Fed. R. Civ. P. 72(b)(3). In the Fourth Circuit, "as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992).

Accordingly, for the reasons further supported here and raised in Plaintiffs' Memoranda filed in opposition to Remington's Motion to Dismiss, Plaintiff's objections to the Memorandum Opinion and Recommendation should be sustained, the Defendant's Motion to Dismiss should be denied, and Plaintiffs' Motions for Extension of Time to file class certification should be addressed by the Court and granted.

## I. NATURE AND STATEMENT OF THE CASE

This is a class action brought by the Plaintiff on behalf of himself and all others similarly situated who purchased one or more Remington 597 17 HMR semi-automatic rifles (hereafter "the subject rifle(s)"). This lawsuit was filed against Defendant Remington on November 29, 2010, seeking damages and/or other remedies for Remington's violations of the Magnuson Moss Warranty Act, Unjust Enrichment and the use of Unfair and Deceptive Trade Practices in the sales of these Remington products. On December 3, 2010, prior to service of a responsive pleading, Plaintiff filed an Amended Class Action Complaint (hereinafter, "Complaint"). On January 20, 2011, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Following briefing by both parties and a hearing on June 19, 2013, the Magistrate Judge entered his Memorandum Opinion and Recommendation on September 30, 2013. This memorandum is submitted in support of Plaintiff's Objection to the

2

subject Memorandum Opinion and Recommendation.

## II. <u>STATEMENT OF THE FACTS</u>

Plaintiff Maxwell is a consumer that purchased two Remington manufactured semi-automatic rifles, model number 597 17 HMR for consumer use. Complaint ¶ 5 Remington's marketing materials contained numerous representations regarding the rifle and its ammunition including, *inter alia*, the following:

- "No other arms and ammunition manufacturer combines so much tradition and experience with innovative technology and precision craftsmanship."

- "The reasons for choosing Remington are as numerous as the models of guns and types of ammunition we make. Some say it's the legendary accuracy. Some say it's the unbeatable value. . . . *[W]e remain unwavering on our dedication to producing firearms, ammunition and accessories which embody the highest standards in quality and are instilled with the spirit of a legendary brand – Remington*"

- **"Model 597™ – Where Technology Meets Craftsmanship**

  Whether you use it for hunting, serious target shooting or an afternoon of plinking, one thing is certain: This is no ordinary rimfire rifle. Far from it. *In fact, the Model 597™ is easily the most advanced autoloading rimfire rifle ever built. . . .* The difference starts with our proprietary bolt-guidance system. It features a unique set of twin tool-steel guide rails (other brands feature only grooved aluminum slots). *Because steel is stronger and far more resistant to wear, the result is not only better stability, feeding reliability and accuracy right out of the box, but significantly superior performance through time.*"

  " . . . . The bolt, hammer and sear of the Model 597 all feature an exclusive Teflon®/nickel plating for absolutely smooth, dependable operation and an ultra-crisp trigger pull (that stays that way). *To assure reliable, long-life accuracy, we've also incorporated a unique positive-locking, permanently rigid barrel attachment clamp. . . .* Completing the breakthrough design are an innovative last-shot magazine."

- **"Model 597™ 22LR and Magnum Version Metal Magazine"**

3

> "*That the metal magazine "... holds ultra-precise dimensional tolerance and yields an exceptional surface finish. Moreover, its extreme rigidity is ideal for demanding high-volume use. ...*"

- "...the 597 magazine has 8-shot(magnum) and 10-shot(long-rifle) capability. *Their extreme rigidity is ideal for demanding, high-volume use.*"

- "**Rimfire – From International competition to Tin Can Demolition.**

  Over the years, no manufacturer has been responsible for more advancements in rimfire ammunition than Remington®. No doubt this is because we give our rimfire ammunition the same meticulous manufacturing attention as our centerfire ammunition. . . . Whether its hunting, plinking or competing, Remington *rimfire cartridges offer consistently outstanding performance.*

- "*At Remington, we're more than just the industry leader in quality and reliability.* By bringing you industry firsts, like the Yellow Jacket® and Viper® hyper velocity ammunition, we've solidified our reputation as leaders in innovation, too. Our commitment to bring you the hottest ammunition on the market continues with the 17 HMR."

Complaint ¶ 5 (emphasis added). Plaintiff specifically plead Remington's aforementioned representations concerning the Remington Model 597 17 HMR rifles and ammunition were false, misleading and deceptive. Complaint ¶ 6.

Due to safety and performance concerns, Remington recalled all subject rifles and their ammunition. In the recall, Remington issued a notice to consumers instructing them to "immediately stop using your Remington Model 597 17 HMR semi-automatic rifle" and to "immediately discontinue use of Remington 17 HMR ammunition." *See* Complaint ¶ 7 (incorporating Remington recall notices and warnings); Ex. A to Def.'s Motion (One example of recall notice warning that continued use of the ammunition in the subject rifles could result in "property damage or serious personal injury"). The recall notices stated, *inter alia*, upon return of their rifles, Remington would provide owners a coupon valued at $200 or $250 (depending upon the model rifle returned) good toward purchase of a replacement Remington firearm. Id. The coupons did not provide

4

consumers a cash refund of any sort and required consumers to buy another Remington product. Id.; Complaint ¶ 35.

Remington does not make a gun comparable to the subject rifle that Plaintiff and each Class member specifically chose to buy, and therefore, Plaintiff and each class member cannot replace the rifle using the subject coupons. Complaint ¶ 36. Remington also cannot sell a subject rifle due to inherent problems with the ammunition in semi-automatic weapons, and therefore, consumers are forced to spend their coupon on a weapon type they did not intend to purchase. Complaint ¶ 37. Remington's coupon also does not represent the full value of the weapon or the ammunition at the time they were purchased. Id. Plaintiff alleges his two rifles have been rendered valueless by virtue of the safety recall as they are too dangerous to shoot or to sell. Complaint ¶ 8.

Remington marketed and represented that the Model 597 17 HMR rifles and ammunition contained a superior design, was a true value, and was otherwise safe for use as a sport hunting and target rifle by consumers, including the Plaintiff and Class Members. Complaint ¶ 30. Remington knew or should have known that the Model 597 17 HMR rifles and ammunition did not or would not conform to its representations and promises. Complaint ¶ 31. By making these false and misleading misrepresentations and omissions, and by concealing the true facts from the Plaintiff, Remington intended that the Plaintiff and Class would rely on its false statements and material omissions, and intended to induce the Plaintiff and Class to purchase the Model 597 17 HMR rifles and ammunition. Complaint ¶ 32. Based upon Defendant's misrepresentations, material omissions, and business practices, Plaintiff and the Class believed that Defendant was selling and providing a safe and reliable rifle for hunting and/or target practice. Furthermore, Defendant's practices, as alleged herein, are such that reasonable consumers, would likewise believe that the Model 597 17 HMR rifles and ammunition would be free from defects and fit for their intended purpose under normal conditions of

use, wear and exposure for an extended period of time. Complaint ¶ 34. Additionally, Defendant never informed Plaintiff or the Class that in the event of a recall, Remington would only supply coupons that: (a) do not necessarily provide a full refund; and (b) require consumers to buy another Remington product. Complaint ¶ 35

### III.   ARGUMENT

#### A.   STANDARD FOR MOTION TO DISMISS.

Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim upon which relief may be granted unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In order to survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). In evaluating a motion to dismiss, "a court must accept the factual allegations of the complaint as true." GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).

#### B.   PLAINTIFF STATES A CLAIM FOR RELIEF UNDER THE MAGNUSON-MOSS WARRANTY ACT (MMWA) AND FOR A BREACH OF WARRANTY CLAIM UNDER NORTH CAROLINA LAW.

The purpose of the MMWA, 15 U.S.C. §2301 *et seq.*, is (1) to make warranties on consumer products more readily understood and enforceable and (2) to provide the Federal Trade Commission with a means of better protecting consumers. H.R. Rep. No. 93-1107, (1974) U.S.C.C.A.N. 7702; People ex rel. Mota v. Central Sprinkler Corp., 174 F.Supp.2d 824, 827 (C.D.Ill. 2001). Pursuant to the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief..." in federal

court. 15 U.S.C. § 2310(d). Although the Act creates a separate federal cause of action for breach of warranty, courts look to the relevant state law to determine the meaning and creation of any warranty. *See* <u>Gusse v. Damon Corp.</u>, 470 F.Supp.2d 1110 (C.D. Cal.2007). It is "beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson-Moss." <u>Carlson v. Gen. Motors Corp</u>, 883 F.2d 287, 291 (4th Cir. 1989); <u>Bussian v. DaimlerChrysler Corp.</u>, 411 F.Supp.2d 614 (M.D.N.C. 2006). In other words, where a plaintiff has stated a claim for breach of warranty under state law, he has stated a claim for violation of the MMWA.

In North Carolina, "[a] products liability claim grounded in *warranty* requires the plaintiff prove (1) the defendant warranted the product (express or implied) to plaintiff, (2) there was a breach of that warranty in that the product was defective at the time it left the control of the defendant, and (3) the defect proximately caused plaintiff damage. Thus, a products liability claim based on breach of warranty is not dependent upon a showing of negligence." <u>Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.</u>, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326 (2000) (citing 1 M. Stuart Madden, *Products Liability* § 2.7, at 32-33 (2d ed. 1988); <u>Morrison v. Sears, Roebuck & Co.</u>, 319 N.C. 298, 301, 354 S.E.2d 495, 497 (1987)).

### 1. Plaintiff has Plead an Express Warranty

"An express warranty arises if a statement of the manufacturer or seller induces the purchase of the product." <u>Bryant v. Adams</u>, 116 N.C. App. 448, 467, 448 S.E.2d 832, 842 (1994) (holding express warranties regarding safety in manufacturer's sales literature for round trampolines did not support buyers' products liability claim against sellers based on breach of express warranty, in light of fact that buyers purchased oval trampoline for which manufacturer had made no express warranties.). "According to

N.C.G.S. § 25-2-313, an express warranty is created when a seller makes '[a]ny affirmation of fact or promise ... which relates to the goods and becomes part of the basis of the bargain....' Whether the parties have actually created an express warranty is a question of fact." Riley v. Ken Wilson Ford, Inc., 109 N.C. App. 163, 168, 426 S.E.2d 717, 720-21 (1993) (quoting N.C.G.S. § 25-2-313(1)(a)).

As provided above, Remington's representations in its advertisements detail its representations that was selling a safe, reliable and durable rifle for hunting and/or target practice. Remington repeatedly represented that the subject rifle "embody the highest standards in quality," that the subject rifle "is no ordinary rifle," that the subject rifle "is easily the most advanced autoloading rimfire rifle ever built," that by using steel the in its manufacturing process "the result is not only better stability, feeding reliability and accuracy right out of the box, but significantly superior performance through time," that Remington's manufacturing details "assure reliable long-life accuracy," that Remington's Metal Magazines' "extreme rigidity is ideal for demanding high volume use," and that Remington as a company is "more than just the industry leader in quality and reliability." Complaint ¶ 5. "Without a doubt, the natural tendency of [Remington's aforementioned] representations is such as to induce the purchase" of its rifles, which they did in this case. Bernick v. Jurden, 306 N.C. 435, 448, 293 S.E.2d 405, 413-14 (1982).

## 2. Although Reliance is not Required for Breach of Express Warranty Claim, Plaintiff Plead Sufficient Reliance to Survive Remington's Motion to Dismiss.

The Court should reject the Magistrate Judge's finding that reliance as part of the basis of the bargain is a required element of a breach of warranty claim and Plaintiff Maxwell's failure to allege reliance was fatal to his claim. The Magistrate Judge erred on both accounts. The issue of reliance for a warranty claim was addressed by the North

Carolina Supreme Court in <u>Bernick v. Jurden</u>, which held in pertinent part:

> Secondly, as pointed out in <u>Kinlaw v. Long Mfg.</u>, ***the element of reliance can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such purchase or use***. 298 N.C. 494, 500 n. 7, 259 S.E.2d 552, 557 n. 7 (1979). Here, the defendants Cooper promoted their product through hockey catalog advertisements and parent guides. Without a doubt, the natural tendency of a representation of "maximum protection to the lips and teeth" is such as to induce the purchase of a hockey mouthguard by a mother for her son's use while playing. Considering the family purpose of the mother's purchase, reliance may be inferred in this case."

306 N.C. 435, 448, 293 S.E.2d 405, 413-14 (1982) (emphasis added);[2] *see also* N.C. Gen. Stat. § 25-2-313 cmt. 3 (2012) (". . . In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence **no particular reliance on such statements need be shown** in order to weave them into the fabric of the agreement. . . .")(emphasis added); *accord* <u>Bussian v. DaimlerChrysler Corp.</u>, 411 F. Supp. 2d 614, 620-21 (M.D.N.C. 2006)("Plaintiff should have an opportunity to develop the issue of reliance through discovery.") (citing <u>Bernick</u>, *supra.;*<u>Kinlaw</u>, *supra.*).[3]

In this case, the Magistrate Judge not only erred in stating the law relating to the issue of reliance as it stated by this State's Supreme Court, but also erred in the analysis of the Plaintiff's allegations. Plaintiff specifically plead in detail the representations made

---

[2] The magistrate Judge relied upon <u>Garner v. Kearns</u>, 257 N.C. 149, 125 S.E.2d 390 (1962) and <u>Hollenbeck v. Ramsy Fasteners, Inc.</u>, 267 N.C. 401, 148 S.E.2d 287 (1966) for the proposition that reliance must be pled. These cases pre-date and are in contradiction to <u>Bernick</u>, *supra.;*<u>Kinlaw</u>, *supra.*

[3] <u>Kinlaw</u> expressly held: "[t]he element of reliance need not always be expressly alleged. It can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such purchase or use." <u>Kinlaw v. Long Mfg. N. C., Inc.</u>, 298 N.C. 494, 501 n.7, 259 S.E.2d 552, 557 n.7 (1979) (citing Comment 3 to G.S. 25-2-313; Comment, <u>Article Two Warranties in Commercial Transactions</u>, 64 Cornell L.Rev. 30, 51-54 (1978); <u>Hawkins Construction Co. v. Matthews Co.</u>, 190 Neb. 546, 564-66, 209 N.W.2d 643, 654-55 (1973)(holding that distribution of an advertising brochure with express representations about the product sufficed for a finding of express warranty)).

by Remington in its advertisements (Complaint ¶ 5, see also ¶ 30) and then provided that "[b]ased upon Defendant's misrepresentations, material omissions, and business practices, Plaintiff and the Class believed that Defendant was selling and providing a safe and reliable rifle for hunting and/or target practice. Furthermore, Defendant's practices, as alleged herein, are such that reasonable consumers, would likewise believe that the Model 597 17 HMR rifles and ammunition would be free from defects and fit for their intended purpose under normal conditions of use, wear and exposure for an extended period of time." (Complaint ¶ 34) The is exactly the situation provided in both <u>Bernick</u>, *supra.;*<u>Kinlaw</u>, *supra.*, and element of reliance should be inferred from Plaintiff's allegations of his purchase, and given the natural tendency of Remington's representations made is such as to induce such a purchase. Accordingly and given this early pleading stage where all allegations are accepted as true, Defendant's Motion to Dismiss Plaintiff's Magnuson Moss Warranty claim should be denied, and Plaintiff should be given the opportunity to develop the issue of reliance through discovery. Given that the Magistrate Judge's decision is in clear conflict with well-established authority of the North Carolina Supreme Court, the comment to section 25-2-313, and the decision of this Court, the Opinion and Recommendation should be reversed.

### 3. Plaintiff has Sufficiently Plead Breach and a Defect.

Remington argued below Mr. Maxell had not alleged a sufficient product defect. Plaintiff disagrees. It is well established that "in a products liability action, based on tort or warranty, a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use." <u>Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.</u>, 138 N.C. App. 70, 76-77, 530 S.E.2d 321, 327 (2000). In this case, Remington issued a recall telling its consumers that it had been notified by its ammunition supplier that the ammunition is not suitable for use in its semiautomatic

rifles, that such use could result in both property damage and/or serious personal injury, and that consumers needed to immediately stop using the subject rifles. (see Ex. A to Def.'s Memo in Supp. of M. to Dismiss). The admissions contained in Remington's recall clearly detail a defect serious enough for Remington to direct all of the consumers of its rifles and ammunition for the Model 597 17 HMR rifles to immediate stop using the ammunition and the rifles due to the threat of property damage and personal injury. Contrary to Remington's assertion, this is a product defect that should be inferred from evidence of the rifles' malfunction, especially given that the recall indicates the Remington rifles were being put to their ordinary use when they malfunctioned, and this malfunction spurred Remington's recall. Mr. Maxwell's allegations are also sufficient to show both the warranty and the breach of those representations. To hold otherwise is irrational. *See* Kinlaw, 298 N.C. at 501, 259 S.E.2d at 557 ("What sensible or sound reason then exists as to why, when the goods purchased by the ultimate consumer on the strength of the advertisements aimed squarely at him do not possess their described qualities and goodness and cause him harm, he should not be permitted to move against the manufacturer to recoup his loss."). Plaintiff's Complaint and the recall notice demonstrates breach of the Remington's warranties and further that contrary to Remington's warranties and advertisements, the subject rifles and ammunition were not produced with "the highest standards in quality," did not "assure life-long accuracy," were not "ideal for demanding, high volume use," and Remington is not "the industry leader in quality and reliability." Complaint ¶ 5, 20. Furthermore, the rifles and ammunition were not a superior design, were not safe and reliable, were not free from defects, and were not fit for their intended purpose under normal conditions of use, wear and exposure for an extended period of time. Complaint ¶ 34. Accordingly, Plaintiff's allegations are sufficient to state a breach of warranty claim under the MMWA.

11

## C. PLAINTIFF HAS SUFFICIENTLY PLEAD AN UNFAIR AND DECEPTIVE TRADE PRACTICES ACT ("UDTPA") CLAIM

North Carolina's UDTPA is *sui generis*, apparently sounding in tort, but neither wholly tortious or wholly contractual in nature. *See* Bernard v. Central Carolina Truck Sales, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984). To prevail on a claim for unfair and deceptive trade practices, a claimant must allege: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused actual injury to claimant. Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol, 893 F. Supp. 526, 540 (E.D.N.C. 1994); Canady v. Mann, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992).

First, the terms "unfair" or "deceptive" are not precisely defined by statute, but rather the surrounding facts of the transaction and the impact on the marketplace determine if the transaction is unfair or deceptive. Canady, 107 N.C. App. at 260, 419 S.E.2d at 602. An act or practice is "deceptive" if it has the tendency or capacity to deceive. Norman v. Loomis Fargo & Co., 123 F.Supp.2d 985, 989 (W.D.N.C. 2000). In determining whether a representation is deceptive, its effect on the average consumer is considered. Opsahl v. Pinehurst, 81 N.C. App. 56, 69, 344 S.E.2d 68 (1986). Proof of actual deception is not required. *See* Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Clearly False statements are deceptive, but even a truthful statement may be deceptive, if it has the capacity or tendency to deceive. Pearce v. American Defender Life Ins. Co., 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986).

"'Unfairness' is a broader concept than and includes the concept of 'deception. Generally a practice is "unfair" when it offends established public policy, or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *See* Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *overruled on other grounds*, Myers & Chapman v. Thomas G. Evans,

12

323 N.C. 559, 374 S.E.2d 385 (1988). Second, North Carolina requires the act or practice to be in or effecting commerce. Spartan Leasing, Inc. v. Pollard, 101 N.C. App. 450, 460, 400 S.E.2d 476, 480 (1991). "'[C]ommerce' includes all business activities, however, denominated." N.C.G.S. § 75-1.1(b). Finally, to recover damages for unfair and deceptive trade practices, a plaintiff must have suffered "actual injury as a proximate result" of the defendant's conduct. See Pearce, 316 N.C. at 470, 343 S.E.2d at 180. Because the statute was intended to enable plaintiffs to recover even when they cannot prove common law fraud, breach of contract, or breach of warranty, the remedies available for unfair and deceptive trade practices are broader than those available under common law. See Bernard, 68 N.C. App. at 232, 314 S.E.2d at 585.

**1. Plaintiff's UDTPA Claim is not a Mere Breach of Contract Claim.**

The Magistrate Judge erred in recommending dismissal of Plaintiff's unfair and deceptive trade practice claim and holding that Plaintiff has not alleged a sufficient aggravating factors and his unfair and deceptive trade practice claim is merely a restatement of his breach of warranty claim.

Under section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act. Branch Banking and Trust Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, disc. review denied, 332 N.C. 482, 421 S.E.2d 350 (1992). Egregious or aggravating circumstances must be alleged before the provisions of the Act may take effect. Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir.1989). Aggravating circumstances include conduct of the breaching party that is either unfair or deceptive. Poor v. Hill, 138 N.C. App. 19, 28, 530 S.E.2d 838, 845 (2000)(finding deception). Finally, in determining whether a particular act or practice is deceptive, its effect on the average consumer is considered. Becker v. Graber Builders, Inc., 149 N.C. App. 787, 794, 561 S.E.2d 905, 911 (2002).

13

Mr. Maxwell's Complaint details a litany of unfair and deceptive practices as Defendant deceptively misrepresented or falsely omitted facts concerning the performance and safety of its rifle and ammunition and its product support. The misrepresentations and omissions as detailed with specificity above include but are not limited to statements concerning the rifles' and ammunition's superior design, true value, reliability, safety and craftsmanship. Complaint ¶¶ 5, 6, 29-31. In direct contrast to Remington's representations, the rifle and ammunition in actuality had performance and safety concerns that were causing property damage and personal injuries, and thus, Remington had to recall the rifle and ammunition and instructed its consumers to stop using them. (Complaint ¶¶ 6, 7, 31; see also Ex. A to Def's Motion to Dismiss) These falsities sufficiently allege a claim for relief under the NCUDTPA as those representations had the tendency and capacity to deceive and did, in fact, deceive Plaintiff and the Class into purchasing the rifles and ammunition.

Additionally, Defendant's actions were unfair. Remington knew or should have known its representations concerning the rifles and ammunition were false, it failed to disclose those deficiencies, and it failed to support its products. Instead of refunding consumers money for the worthless rifles, Remington implemented a recall that only allows recovery if consumers purchase Remington products. Complaint ¶ 31, 32, 35 Remington's failures to disclose information are considered deceptive as they are equivalent to misrepresentations. *See* Kron Medical Corp. v. Collier Cobbs & Assocs., 107 N.C. App. 331, 420 S.E.2d 192 (1992); South Atlantic Ltd. Partnership of Tennessee, L.P. v. Riese, 284 F.3d 518, 537-38 (4th Cir. 2002) (fact Defendant made no representation of any sort, was precisely why his conduct was "unethical, unscrupulous and directly injurious to consumers" and a violation of North Carolina's UDTPA reasoning the obligations imposed by the UDTPA "create a cause of action broader than traditional common law actions.") (quoting Marshall, *supra.*). Accepting those

allegations as true, Plaintiff adequately alleges Defendant's aggravating unfair and deceptive acts.

### 2. Plaintiff has Adequately Alleged Reliance.

The Magistrate Judge erred in finding that Plaintiff's claim must fail due to Plaintiff's failure to allege reliance in his Complaint. This conclusion misstates what is pled in Mr. Maxwell's Complaint.

The Complaint details a litany of false representations by Remington. (Complaint ¶¶ 5, 6, 29, 30)  In direct contrast to Remington's representations, the rifle and ammunition in actuality had performance and safety concerns that were causing property damage and personal injuries, and thus, Remington had to recall the rifle and ammunition and instructed its consumers to stop using them. (Complaint ¶¶ 6, 7, 31; see also Ex. A to Def's Motion to Dismiss)  Defendant intended for Plaintiff to both rely on its misrepresentations and to induce purchase of its rifles and ammunition. (Complaint ¶ 32)  Plaintiff specifically pled that "[i]n purchasing rifles and ammunition, Plaintiff believed Defendant was selling and providing a safe and reliable rifle, and reasonable consumers, likewise believed the rifles and ammunition would be free from defects and fit for their intended purpose." (Complaint ¶¶ 4, 34)  This is a sufficient allegation of reliance on Remington's representations.  *Cf.* Adkins v. Crown Auto, Inc., 488 F.3d 225, 230 (4th Cir. 2007) (referring to the district court's jury instruction where the "court defined 'reliance' as 'a belief that a representation is true, which causes a person to take action he would not otherwise have taken.'"); *see also* New Webster's Dictionary and Thesaurus of the English Language, 841 (1992)(defining reliance as "readiness to believe in and depend on the good qualities of someone or something . . . ."); Collins Thesaurus of the English Language (2nd ed. 2002) (synonyms for "reliance" . . . "belief").

Furthermore, the Magistrate Judge did not address Remington's omissions and unfair conduct of not disclosing information concerning the problems with its rifles and

ammunition.[4]  It would be impossible for Plaintiff to rely on information that was not disclosed to him.  Defendant never informed Plaintiff: (1) that it knew its rifles and ammunition did not conform to it representations and promises; (2) that it did not disclose its performance in the event of a recall; (3) that it was concealing and omitting the true facts concerning its rifles and ammunition; and (4) that Remington would only supply coupons that: (a) do not provide a full and adequate refund; and (b) require consumers to buy another Remington product as Remington does not make a comparable gun, and therefore, cannot replace the gun using the coupons.  (Complaint ¶¶ 31, 32, 35, 36) These allegations show Remington's conduct was  "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" including the Plaintiff.  Johnson, 300 N.C. at 263, 266 S.E.2d at 621.

Similarly, Plaintiff's complaint adequately pleads Mr. Maxwell was proximately caused damage, because he purchased dangerous and worthless products, whose true qualities were misrepresented and/or omitted, and the alleged remedial coupons Remington offers do not compensate Plaintiff for full the value of the rifle and ammunition as represented, and further the coupons require Plaintiff to purchase another Remington product that he does not want. Complaint ¶¶ 5-6 35-37 Plaintiff sufficiently alleges proximate causation and injury, and thus, Defendant's argument urging dismissal should fail.

### 3.  Plaintiff has Adequately Alleged Injury Under the UDTPA.

Contrary to Remington's argument, Plaintiff was damaged as soon as he purchased the subject defective rifles and ammunition, and the complaint adequately alleges this injury.  (See Complaint ¶¶ 35-37)  This case is analogous to Coley v.

---

[4] The cases relied upon by the Magistrate -- Sunset Beach Dev. Inc. v. AMEC, Inc., 196 N.C. App. 202, 675 S.E.2d 46 (2009) and  202, 675 S.E.2d 46 (2009) and  202, 675 S.E.2d 46 (2009) and Bumpers v. Community Bank of Northern Virginia, --- N.C. ---, 747 S.E.2d 220 (2013) only dealt with UDTPA claims involving the lack of reliance upon involving claims of affirmative misrepresentations by the defendants.

16

Champion Home Builders Co., 162 N.C. App. 163, 166-67 590 S.E.2d 20, 22 (2004), where the North Carolina Court of Appeals held the plaintiff was injured when he purchased a defective tie down system and/or when it would have to incur the cost to purchase an alternative safe tie down. In contrast to Defendant's authorities, Plaintiff does not "seek damages only related to the product itself," but even if he did, North Carolina's Courts have consistently provided recovery under the UDTPA in similar circumstances. *See* Roane-Barker v. Southeastern Hosp. Supply Corp., 99 N.C. App. 30, 392 S.E.2d 663 (1990) (measure of damages under Chapter 75 is broader than at common law).

Plaintiff was damaged when: (1) he paid money to purchase an unsafe and useless product; (2) Defendant would not provide a safe replacement; (3) Defendant only offered a coupon for Remington products that are not the same as the subject rifles and ammunition and are not wanted; (4) the recall rendered his rifles and ammunition worthless; (5) Plaintiff was forced to purchase replacements; and (6) the coupons Remington has offered are insufficient in amount to reimburse the Plaintiff and the Class Members for what they paid for the subject rifles, even if they were willing to use the coupons. The proper measure of damages for unfair and deceptive trade practices is that which will "restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money." Bernard, 68 N.C. App. at 233, 314 S.E.2d at 585, *quoted in* Poor v. Hill, 138 N.C. App. 19, 35, 530 S.E.2d 838, 848 (2000).[5] *Bernard* was a case, involving the sale of a truck where the seller

---

[5] Defendant argued below the lack of contractual privity between the Parties prohibits Plaintiff's cause of action. Contractual privity *is not* required in order to maintain a cause of action under Chapter 75. *See* J.M. Westall & Company, Inc. v. Windswept View of Asheville, Inc., 97 N.C. App. 71, 387 S.E 2d 67 (reciting numerous cases where North Carolina Courts have recognized Chapter 75 causes of action arising outside the context of a contractual relationship between the plaintiff and defendant), *disc. rev. denied*, 327 N.C. 139, 394 S.E.2d 175 (1990). As the Court of Appeals noted "the proper inquiry is not whether a contractual relationship existed between the parties, but rather whether the defendants' allegedly deceptive acts *affected* commerce. A contractual relationship is not required in order to affect commerce." Id. at 75, 387 S.E.2d at 69. In this case, Plaintiffs have adequately alleged Defendant's

17

misrepresented the size of the truck's engine and suitability for long-distance hauling, in which the Court allowed plaintiff to recover the equivalent value of his truck used for a trade-in and the three payments he had made on the truck. This sum, amounting to a full refund of what he had paid the defendant, "restored the plaintiff to his original condition." Id. at 233, 314 S.E.2d at 585-86; *accord* Huff v. Autos Unlimited, Inc., 124 N.C. App. 410, 477 S.E.2d 86 (1996) (purchaser of an unsafe automobile, suffered actual injury by purchasing a car that was neither safe nor reliable and that she had been misled by defendants into believing otherwise); Myers v. Liberty Lincoln-Mercury, Inc., 89 N.C. App. 335, 365 S.E.2d 663 (1988)(UDTPA violation where defendant sold plaintiff a 1982 model but represented car was a 1983 model); Morris v. Bailey, 86 N.C. App. 378, 358 S.E.2d 120 (1987)(allowing recovery of down payment and payments on automobile loan where condition of car was misrepresented).

Chapter 75 allows for a wide recovery of damages where the unfair or deceptive conduct of a party induces another party to make a purchase. Here, Defendant's conduct, in misrepresenting and/or failing to disclose the defects and shortcomings of its rifle and ammunition, resulted in the Plaintiff buying a product he would not have otherwise purchased. If Defendant had disclosed *inter alia* the rifle and ammunition is defectively designed, would not conform to Remington's numerous representations, and is not safe, Plaintiff would not have purchased the rifles and ammunition. By misrepresenting and/or failing to disclose this material information, Defendant induced consumers to purchase its products. Under North Carolina law, this is compensable, and Plaintiff's allegations are sufficient to allege that injury.

---

unfair and deceptive acts and practices have affected and continue to affect commerce. Accordingly, any allegation that contractual privity is required in order for Plaintiffs to maintain their cause of action should be disregarded. *See e.g.* State ex. rel. Edmisten v. Zim Chemical Co., Inc., 45 N.C. App. 604, 263 S.E.2d 849 (1980)(court properly awarded restitution to indirect purchasers of misbranded antifreeze, where court in effect transferred the restoration due two direct purchasers to their subsequent buyers who had suffered actual loss).

**4. The Magistrate Judge properly held Chapter 75 applies to Remington's conduct.**

Defendant cited The "In" Porters, S.A. v. Hanes Printables, Inc. and Sara Lee Corp., 663 F. Supp. 494 (M.D.N.C. 1987), and Ada Liss Group (2003) v. Sara Lee Corp., 2009 WL 3241821 (M.D.N.C. Sept. 30, 2009) for the basis that Plaintiff cannot recover because "this court [allegedly] requires 'an in-state injury to plaintiff before plaintiff can state a valid unfair trade claim.'" (Def. Memo. 13) First, Defendant entirely misstates the law. *'In' Porters* involved an analysis with one section of the State's long arm statute as applied with the UDTPA and merely stood for the proposition that a foreign plaintiff ('In' Porters – France) could not recover under the NCUDTPA from foreign defendants (Sara Lee –Maryland and Hanes - Delaware) where the only conduct alleged to have violated Chapter 75 occurred outside of North Carolina, 663 F. Supp. at 502-03. This is clearly not the case here. Ironically and embarrassingly, Defendant cites the Magistrate Judge's decision that was not ultimately adopted by Judge Tilley on the UDTPA section of the *Ada Liss* opinion. *See* Ada Liss Group (2003) v. Sara Lee Corp., 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010). *Ada Liss* involved an exclusive distributorship agreement where an Israeli Plaintiff's sought damages caused to it in Israel by a North Carolina Defendant's conduct. Id. In distinguishing *'In' Porters,* and in denying Defendant's motion to dismiss the UDTPA claim, Judge Tilley analyzed and reached the same decision this Court should in this case; namely where a North Carolina Defendant is alleged to have committed a violation of Chapter 75, "the court does not have to search for an impact on the Plaintiff's state operations or a strong state interest." Id. at *13 ("Where the alleged conduct occurred within the State . . . the only further limits on personal jurisdiction are those imposed generally by the due process clause.") Judge Tilley held "[b]ecause the alleged conduct is unmistakably within the intended scope of the UDTP statute, and because the jurisdictional and constitutional issues fatal to jurisdiction in the *'In' Porters* case are simply not present here, Ada Liss's UDTP claim

19

will not be dismissed for want of personal jurisdiction." Id. at *14.

Defendant controlled and directed its unfair and deceptive conduct and practices from its headquarters in North Carolina. (Complaint ¶¶ 2, 38) Accordingly, Plaintiff may bring its claim under the NCDTPA. North Carolina clearly has an interest in assuring that its residents conduct business in an ethical fashion. As in *Ada Liss Group (2003)*, the Plaintiff may assert UDTPA claims against Remington for its conduct that originated and was directed from North Carolina. Complaint ¶¶ 2, 5-7, 38-40.

## CONCLUSION

The Magistrate Judge's Memorandum and Recommendation is erroneous, as set forth above, because the Magistrate Judge erred in holding that reliance is required for Plaintiff's breach of express warranty, and that Plaintiff failed to plead he relied on Remington's advertisements in purchasing the subject rifles. The Magistrate Judge further erred in holding Plaintiff has not plead an Unfair and Deceptive Trade Practice claim. Although Plaintiff was not required to plead reliance for his breach of express warranty claim, he did adequately do so. Similarly, Plaintiff did plead aggravating factors of both unfairness and deception in addition to his breach of warranty claim that are sufficient to satisfy the requirements for his unfair and deceptive trade practice claim.

**WHEREFORE**, for the reasons set forth herein and raised in Plaintiffs' Memoranda filed in opposition to Remington's Motion to Dismiss, Plaintiff's objections to the Memorandum Opinion and Recommendation should be sustained, the Defendant's Motion to Dismiss should be denied, and Plaintiffs' Motions for Extension of Time to file class certification should be addressed by the Court and granted.

Respectfully submitted this the 18th day of October, 2013.

SHIPMAN & WRIGHT, LLP

By:   /s/William G. Wright
      Gary K. Shipman (NC Bar #9464)
      *gshipman@shipmanlaw.com*
      William G. Wright (NC Bar #26891)
      *wwright@shipmanlaw.com*
      575 Military Cutoff Road, Suite 106
      Wilmington, North Carolina 28405
      Telephone: (910) 762-1990
      Facsimile:  (910) 762-6752

BINGHAM & LEA, P.C.

Benjamin R. Bingham
*ben@binghamandlea.com*
Texas State Bar No. 02322350
319 Maverick Street
San Antonio, Texas 78212
Telephone: (210) 224-2885
Facsimile: (210) 224-0141

BOLEN, ROBINSON & ELLIS, LLP

Jon D. Robinson, IL ARDC #02356678
*jrobinson@brelaw.com*
Christopher   M.   Ellis,   IL   ARDC
#06274872
*cellis@brelaw.com*
202 South Franklin Street, 2nd Floor
Decatur, Illinois 62523
Telephone: (217) 429-4296
Facsimile: (217) 329.0034

**HOLLAND, GROVES, SCHNELLER & STOLZE, LLC**

Eric D. Holland, #39935MO
*eholland@allfela.com*
R. Seth Crompton, #57448MO
*scrompton@allfela.com*
350 N. Tucker, Suite 801
St. Louis, Missouri 63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
Telephone:  (314) 241-8111

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2013, I electronically filed the foregoing Plaintiffs' Memorandum of Law in Support of Objection to Magistrate Judge's Memorandum and Recommendation using the CM/ECF system which will send notification of such filing to the Defendants through its attorneys.

The undersigned is informed and believes that all parties entitled to Notice will receive this Notice of this filing via the Court's electronic distribution system pursuant to Rule 5 of the Federal Rules of Civil Procedure.

This the 17th day of October, 2013.

<div style="margin-left:40%">

**SHIPMAN & WRIGHT, LLP**
Attorneys for Plaintiff


By:   <u>/s/William G. Wright</u>
      **WILLIAM G. WRIGHT**
      N.C. Bar No.: 26891
      575 Military Cutoff Road, Suite 106
      Wilmington, NC 28405
      Telephone: 910-762-1990
      Facsimile:  910-762-6752
      E-mail: wwright@shipmanlaw.com

</div>